Thursa M. **DAVIS**

v.

Caspar **WEINBERGER**, Secretary of Health, Education and Welfare.

Civ. No. 73-265.

United States District Court,
M. D. Pennsylvania.

Feb. 20, 1975.

814

McCrea & McCrea, Shippensburg, Pa., for plaintiff.

Laurence M. Kelly, Asst. U. S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This is an action brought under 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g) to review a decision of the Secretary of Health, Education and Welfare denying plaintiff-claimant's application for the establishment of a period of disability and disability insurance benefits pursuant to Sections 216(i) and 223(a) of the Act, 42 U.S.C. §§ 416(i) and 423(a). The matter was referred to U.S. Magistrate Raymond J. Durkin who, after carefully reviewing the entire record, recommended that the Secretary's motion for summary judgment be granted. For the reasons expressed herein, the recommendation will not be accepted and the cause will be remanded to the Secretary for further action.

The Administrative Record in this case consists of 99 pages which include, inter alia, a 24-page transcript of claimant's testimony before the Administrative Law Judge (ALJ); a Discharge Summary from the Fairfield, Georgia Hospital, dated July 20, 1970; a medical report of R. N. Richards, M. D., dated May 17, 1971; a medical report of Helen L. Heim, M. D., dated October 1, 1971; medical reports of F. F. Smith, M. D., dated November 4, 1971, and November 18, 1971; radiological reports of Adolfo Maldonado, M. D., dated October 30, 1971, and November 2, 1971; a pathological report of C. A. Ramirez, M. D., dated November 2, 1971; a subsequent orthopedic medical report of Dr. Richards, dated December 22, 1971; a letter to claimant from Dr. Richards, dated January 21, 1972; a neurological report of Jay M. Levy, M. D., dated December 13, 1972; and a medical statement of Forrest F. Smith, M. D., dated December 1, 1972.

In her original application, claimant contended that she was disabled as a result of a back injury. Her application was denied and, upon request for reconsideration, she was informed by the Director of the Division of Reconsideration that, while her condition may cause some discomfort which would preclude her from performing any work of a heavy nature, she was, nevertheless, ca-

pable of "performing sedentary or light work in keeping with your past education and experience." (R 59) [1]

Claimant requested a hearing and her testimony was taken. As to her work experience, she testified that she left high school to get married, worked 5 months as a waitress, later as a nurse's aid and as a machine operator in a men's trouser factory. She mentioned that she was operated on for a back injury and for removal of her gall bladder. In addition, she stated that she doesn't sleep well but is up and down through the night, can only do light housework, experiences numbness in her feet causing her to fall while walking and that she has actually fallen five times in the street, that she feels as if she is going to fall "head first" while descending steps, and that she has applied for work but has been refused because of her history of back problems.

█ In a three and one-half page decision, of which less than one page related to an evaluation of the evidence, the ALJ concluded that claimant was not under a "disability" as defined in the Social Security Act. In evaluating the evidence, he made absolutely no reference to or comment on the claimant's testimony and her subjective complaints. His generalizations of the other evidence make review very difficult and compel the reviewing agency, whether it be the magistrate or the district court, to search the record in an effort to determine whether there is substantial evidence to support his conclusion that claimant is not entitled to benefits. As a result, the Magistrate in this case has made a much more meaningful and comprehensive analysis of the evidence than did the ALJ. The ultimate findings of the ALJ are couched in the language of the statute and are not factual findings at all; if anything, they are more prop-

erly classified as conclusions of law. A reference to the Magistrate's report illustrates the inadequacy of the findings and demonstrates how the Magistrate had to fill in the gaps, largely through assumptions, in order to put together a record which he could adequately review.[2] The Magistrate notes in his report that "the administrative law judge developed the plaintiff's vocational background in only a most general way" (M.R. 1); that he "did not develop the time when [her work in the garment industry] took place" (M.R. 1); that a report of disability interview gave some brief insight into her vocational training (M.R. 2) (a report not alluded to by the ALJ in his decision); that the ALJ "found only in a general way that plaintiff's 'impairments' were not disabling" (M.R. 5); that the ALJ determined that plaintiff "did not show such impairment of function or limitation of motion as would meet or be the equivalent of the criteria set forth in 1.05 of the Social Security Regulations No. 4 (20 C.F.R. 404.-1506) which describes for each of the major body systems the specific medical findings which are essential in establishing a diagnosis or in confirming the evidence of an impairment" (M.R. 5) (without any attempt by the ALJ to list the criteria, to identify the findings that would be required in plaintiff's case, or to relate plaintiff's evidence or lack of evidence to such specific medical findings); that the ALJ "*apparently* found that plaintiff's back condition represented a moderate impairment" (M.R. 5, 6); that "the administrative law judge's *apparent* finding that plaintiff suffers from a moderate back impairment *would appear* to be supported by substantial evidence" (M.R. 9); that "(i)t is not clear what the administrative law judge means by a 'stomach disorder', that is, whether he had reference to her abdominal complaints or some other type of dis-

---

1. Hereafter "R" will refer to the Administrative Record and "M.R." to the Magistrate's Report.

2. In addition to finding the facts, the ALJ is charged with the duty of developing the

facts, Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), in order to remove doubts concerning a claimant's condition. See Hess v. Secretary of Health, Education and Welfare, 497 F.2d 837, 841 (3rd Cir. 1974).

order" (M.R. 10); that the ALJ "*apparently* felt that these conditions [cystitis, diverticulitis, gallbladder attacks and female organ difficulties] were not impairing, since he made no findings with regard thereto" (M.R. 10); that the ALJ "*apparently* concluded that plaintiff could not return to her most recent former work as a nurse's aid, or to her former work as a waitress, but found that plaintiff had the capacity to perform as a sewing machine operator, and other work in the garment industry, which she had performed for a one-year period in 1964 or 1965" (M.R. 12); that "[*a*]*pparently* on this basis the administrative law judge did not call a vocational expert to testify with respect to plaintiff's work capacity in her then present condition" (M.R. 13); that the ALJ's "finding would be supported *only* if administrative notice could be taken of the fact that operating a sewing machine involves no substantial bending or lifting which Dr. Richards (plaintiff's physician) *apparently* feels to be beyond her capacity" (M.R. 14); and that "it appears, therefore, that administrative notice . . . could be, and *apparently* was, taken of the fact that jobs such as cashier or clerk exist in significant numbers in the national economy." (M. R. 14) (emphases supplied).

Determination of eligibility under the Act depends to a large degree on expert medical and vocational evidence. It is technical, often contradictory, and most certainly not the type of evidence found in an ordinary civil lawsuit or controversy. Because of this, the ALJ owes it to the reviewing court and to the claimant to spell out clearly and with precision his factual findings. If he accepts the findings and opinion of a particular expert witness and rejects those of another, he should say so with appropriate references to the transcript or the record so that a reviewing court can determine its substantiality without fishing through the entire record.[3] If

he believes a claimant is exaggerating her symptoms, then he should so indicate in his findings.

Those factual issues that are most often disputed, e. g., whether claimant suffers from an impairment, the severity of it, whether it precludes claimant's former work, what work he is capable of performing, whether such work exists in significant numbers in the region where he lives or in several regions of the country, etc., should be met head-on and not be submerged in generalizations or described in the language of the statute. It is incumbent upon the fact finder to make specific findings—the Court may not speculate as to his findings. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966). An administrative decision that a claimant is not eligible for benefits must be supported by explicit findings of all facts that are essential to the conclusion of ineligibility. Choratch v. Finch, 438 F.2d 342, 343 (3rd Cir. 1971). The judiciary must hold administrative officers to high standards in the discharge of their fact-finding functions. Baerga v. Richardson, 500 F.2d 309 (3rd Cir. 1974).

The number of appeals from the Secretary's decisions under 42 U.S.C. § 405(g) has reached epidemic proportions. There are close to 500 cases pending in this district alone. The Secretary is obligated under the Act and the Social Security Regulations to make findings of fact and to furnish a statement of reasons. The factual findings, it would seem to me, would be easier to understand if appropriate and particular reference to the transcript page, record or report supporting such finding was made and if the statement of reasons explained why the evidence in support of this finding was accepted and contrary evidence rejected. In this way, review can be meaningful and can be accomplished in much less time than it now requires. In addition, if more specific findings are made with appropriate ref-

---

3. This was the format followed by Magistrate Durkin and, as a result, the weakness of the ALJ's findings surfaced.

erence to the record, then, upon review in this Court, counsel for the Government and for the plaintiff can directly address the question of whether a finding of any fact is supported by substantial evidence.

Therefore, the Report of the Magistrate will not be accepted inasmuch as the decision of the Administrative Law Judge, upon which the Secretary and Appeals Council relied, is inadequate to allow for a meaningful review within the contemplation of 42 U.S.C. § 405(g). The cause is hereby remanded to the Secretary for further consideration in accordance with the views set forth in this memorandum.