813 A.2d 306

Jacob **HIKMAT,**

v.

**HOWARD COUNTY, Maryland, et al.**

**No. 2515, Sept. Term 2001.**

Court of Special Appeals of Maryland.

Dec. 4, 2002.

Reconsideration Denied Jan. 29, 2003.

---

Cynthia Hitt Kent, Owings Mills, for appellant.

Paul T. Johnson, Deputy County Solicitor, Ellicott City, for appellee, Howard County.

Jennifer Bean-Dempsey (Ronald Dempsey, on the brief), Ellicott City, for appellees, Intervenors pro se.

Argued before DAVIS, JAMES R. EYLER, and PAUL E. ALPERT (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

RAFAT, Inc., appellant,[1] filed a petition with the Howard County Department of Planning and Zoning ("DPZ") to waive

---

1. There are various references in the record to Jacob Hikmat; Jacob Hikmat, Inc.; Jacob Hikmat, President, RAFAT, Inc.; and RAFAT, Inc. We have determined that the proper party is RAFAT, Inc.

a requirement contained in the Howard County Subdivision and Land Development Regulations ("HCSLDR") in order to permit disturbance of a stream and buffer area located within its property. The request was denied by DPZ, and appellant appealed to the Board of Appeals ("Board"). The Board reversed, granting appellant's waiver petition, and Howard County, ("the County"), appellee, on behalf of DPZ, filed a petition for judicial review in the Circuit Court for Howard County. The circuit court reversed, and appellant noted an appeal to this Court. The primary task facing this Court is to determine whether the Board committed any errors of law or acted arbitrarily or capriciously. We hold that it did not commit any errors of law, but that its decision granting the waiver cannot be sustained because the findings and conclusions contained in its opinion are inadequate.

In addition, we are presented with the question of whether the circuit court erred in granting a motion to intervene filed by several community members, additional appellees. We shall hold that the circuit court did not err.

### Factual Background

Appellant owns a 6.9 acre parcel of land, zoned R–20, in Howard County. A small stream crosses the property in a north-south direction with approximately two-thirds of the property lying on one side of the stream. In February 1997, appellant sought approval from DPZ to subdivide the property into 12 lots and open space. The proposed subdivision reflected 4 lots on the one-third portion of the property, accessed by a use-in-common driveway crossing the stream.

DPZ initially approved appellant's sketch plan, and later its preliminary plan, but by letter dated February 11, 1999, DPZ rescinded the approval. The letter explained that at the time the sketch plan was approved, DPZ regarded the disturbance needed to construct the proposed driveway as necessary because it was to be placed over an existing steel pipe, and the embankment would be part of an in-stream storm water management pond. By the time of the preliminary plan, however, the driveway was no longer located at the site of the

existing pipe, and the embankment no longer played a role in storm water management. Due to the changed circumstances, DPZ requested a revised preliminary plan and further stated, "[i]f you intend to pursue the current design which includes residential Lots 10–13, you must submit a formal waiver petition for relief from Subdivision Regulations, Section 16.116(a), to allow the disturbance within the environmental buffers needed to construct the proposed use-in-common driveway designed to serve as access for those lots." [2]

On June 1, 1999, appellant filed a waiver petition, pursuant to HCSLDR section 16.104, seeking permission to grade and remove vegetative cover for the purpose of constructing the use-in-common driveway. Section 16.104(a), in pertinent part, provides:

> So that substantial justice may be done and the public interest secured, the Department of Planning and Zoning may grant waivers of the requirements of [the HCSLDR] in situations where the Department finds that extraordinary hardships or practical difficulties may result from strict compliance with [the HCSLDR] or determines that the purposes of this Subtitle may be served to a greater extent by an alternative proposal.

Subsection (b) further requires that the developer demonstrate "the desirability" of a waiver and that the waiver must not have the effect of "nullifying the intent and purpose" of the HCSLDR.

Appellant, in its waiver petition, asserted the following as justification for its request: (1) strict compliance with the regulations would result in extraordinary hardship and practical difficulties because one-third of the buildable property would be unusable, thereby prohibitively increasing the development cost per lot and preventing a "credible" builder from pursuing the project, (2) all alternatives were considered and

---

2. HCSLDR section 16.116(a) provides for protection of streams and wetlands by prohibiting grading, removal of vegetative cover and trees, paving, and locating new structures within a wetland or streambank and a specified buffer zone.

appellant chose the most feasible alternative, (3) the waiver would not be detrimental to the public interest because (a) the crossing would not be noticeable from Gwynn Park Drive, (b) the crossing would have no flooding impact on upstream properties, (c) the crossing was more than 600 feet from the downstream property, (d) erosion and sediment control measures would be provided, and (e) granting the waiver would control 100 year storms, a benefit greater than that required by the regulations, and (4) approval of the waiver would not nullify the intent of the regulations because it would minimize the impact on the stream while allowing development in accordance with zoning regulations.

By letter dated July 27, 1999, DPZ denied the waiver request, providing the following reasons for the denial:

1. Nullifies the Intent of the Regulations

Effective August 19, 1999, no forest conservation easements will be allowed on residential lots less than 10 acres in size, unless the preliminary plan has signature approval by that date. Per Section 16.1205(a), (d), & (e), subdivision, site development, and grading shall leave forested stream buffers, steep slopes, and areas contiguous with those sensitive areas in an undisturbed condition and protected by inclusion as part of the forest conservation easement area. Steeply wooded slopes and stream buffers are proposed to be disturbed on this site for the purpose of providing the access which would allow creation of 4 lots. In addition, priority tree save areas adjacent to the stream and its buffers would have to be disturbed to accommodate the development of the 4 lots. This Division will not accept fee-in-lieu or off-site easements as an alternative to protection of the priority wooded areas unless the applicant has demonstrated that reasonable efforts to protect that priority forest have been taken; that the plan cannot be reasonably altered to include protection of the priority forest; or that a specific alternative offsite location has been identified where forest planting would have a greater environmental benefit

than on this site. The applicant has failed to provide such justification.

2. Self–Created Hardship

Per Section 16.116(c), the applicant has attempted to establish that the driveway crossing is essential for the creation of 4 of the 12 lots and has shown the disturbance (conceptual grading) necessary for placing a driveway across the environmental area, which wold allow development of those 4 lots across the stream. The applicant has stated that no other reasonable alternative access points are available through the adjacent lots or elsewhere on the site to the 1.3 acre piece of land on the other side of the stream and that development of the 4 lots is not possible except by crossing the stream and grading for the crossing by a use-in-common driveway.

However, there is no guarantee of lot yield in the R–20 zoned district. The applicant has failed to demonstrate that the proposal would not nullify the purpose of the Regulations, which is to protect environmental buffers and steep slopes on the site for the purpose of preserving water quality and vegetative cover on erodible soils. The applicant has not shown that reasonable use of the 6.7 acre site is dependent on realizing the density proposed (i.e., 12 lots on 6.9 acres). Without the stream crossing, the developer can create 8 residential lots.

3. Detrimental to the Public Interest

The lot and use-in-common driveway layout proposed as justification for the stream crossing is a forced design, shoe-horning minimum-sized (14,000 sf.) lots into the narrow wooded stream valley adjacent to existing residential backyards. One lot is encumbered by a drainage structure; another lot is encumbered with the paving for the use-in-common driveway to be 7 feet from the house; a third lot has questionable driveway access into the garage. The use-in-common driveway itself has no flexibility in design. It requires wholesale removal of priority forest adjacent to the 50–foot stream buffer and construction of retaining walls to create a bench for construction.

In order to accommodate lots in compliance with the
minimum building envelopes required by Zoning, the
driveway must be located as far as possible uphill and
adjacent to the neighboring properties, leaving limited
room for the required landscape buffer.

On August 5, 1999, DPZ sent a letter to appellant request-
ing a revised subdivision plan. On September 14, 1999, appel-
lant submitted a revised plan which reflected a 1.9 acre lot, in
lieu of four lots, and without a stream crossing. On October
14, 1999, DPZ approved the plan.

Appellant noted an appeal to the Board, challenging DPZ's
denial of its waiver request and DPZ's requirement for a new
plan. In pertinent part, appellant asserted that DPZ erred by
(1) referencing law not yet in effect, (2) referencing distur-
bance of steep slopes that do not exist, (3) referencing a
distance of 8' from the use-in-common driveway to adjacent
properties while the proposal was 10', and (4) other factual
errors.

The Board heard testimony on October 19, 1999, December
2, 1999, February 22, 2000, and June 8, 2000. Cindy Hamil-
ton, a DPZ employee, testified that there were no steep
slopes, wetlands, or flood plains within the stream or stream
buffer. She also testified that DPZ was justified in consider-
ing the entire area, not just the stream and buffer area, when
making its decision. She stated that DPZ was concerned with
the tightness of the "building envelope," but acknowledged
that in the absence of the stream crossing issue, the proposed
lots would be allowed. Jacob Hikmat testified that the project
met the requirements of Howard County's Forest Conserva-
tion Act, *see* Howard County Code § 16.1205 (laying out the
requirements of a forest conservation plan), and the require-
ments of the applicable Howard County Zoning Regulations.
He also testified that the hardship was not self created, but
was created by the stream and that the configuration and size
of the lots bore no relevance to the impact of the stream
crossing. Joseph Rutter, Director of DPZ, testified that a
reasonable use of the property existed, without crossing the

stream, because an 8 lot subdivision was viable. Testimony revealed that the forest conservation changes, referred to in DPZ's July 27, 1999 letter, were contained in Council Bill 13–1999, effective August 19, 1999, and prohibited forest conservation easements on residential lots less than ten acres in area. Mr. Rutter explained that the reference was placed in the denial letter as a "heads-up" warning which could affect the preliminary plan approval.

On July 21, 2000, the Board issued its Decision and Order. The Board described the case as a *de novo* appeal conducted in accordance with Section 2.210(a) of the Board's Rules of Procedure, contained within Title 2 of the County Code. Citing section 2.210(a)(4)(ii), the Board acknowledged that "[t]he burden of proof in this appeal is on the Appellants to show that the action taken by DPZ in denying ... [the waiver petition] was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law." After acknowledging that the initial burden was on appellant, the Board observed that DPZ was obligated to apply the criteria contained in HCSLDR section 16.104(a), and the burden of demonstrating the desirability of a waiver was on appellant. Ultimately, the Board concluded that DPZ's denial was arbitrary and capricious, pointing to the following reasons by DPZ:

(1) citing a law that is not yet in effect as a basis for denying the waiver request; (2) inappropriately captioning the second basis for denying the waiver request as a "self-created hardship" is not accurate when evidence was presented by the Appellant that the hardship was created by the stream and not by the creation of lots; (3) the letter denying the waiver request states that the waiver is detrimental to public interest, however, the basis given for the waiver being detrimental to the public interest is the proposed lot sizes and configurations. The lot configurations do not have anything to do with the environmental impact regarding the stream crossing and the evidence showed that the proposed lots will meet the required subdivision regulations. DPZ's denial letter fails to address the public interest which is the protection of the stream and stream buffer

and does not address the environmental impact of the area to be crossed as a basis for its denial of the waiver request.

Based on its conclusion that DPZ's denial of appellant's waiver petition was arbitrary and capricious, the Board granted appellant's waiver petition.

On August 18, 2000, appellee, on behalf of DPZ, filed a petition for judicial review in the Circuit Court for Howard County. On September 28, 2000, Ronald Dempsey, Jennifer Bean–Dempsey, Jeffrey Quillen, Richard Been, and Ann von Lossberg, members of the Gwynn Acres community, filed a motion to intervene in the circuit court proceedings.[3] On April 13, 2001, the court granted their motion.

On November 1, 2001, the court held a hearing to review the Board's decision, and on January 22, 2002, issued its own decision. The court reversed the Board's decision and remanded the case to the Board to either affirm DPZ's decision or remand the matter to DPZ for DPZ to correct its decision. The court stated that, according to the applicable judicial standard of review, it was required to determine whether the Board's decision was arbitrary, capricious, or illegal. The court held that (1) the Board exceeded its authority under section 2.210(c) by granting the waiver petition based on errors in wording or captioning in the denial letter, explaining that because "the question before the agency was fairly debatable, the matter should have been remanded to DPZ to correct its denial letter" (footnote omitted), (2) the Board impermissibly substituted its judgment of the appropriate "public interest" criteria under HCSLDR section 16.104 for the judgment exercised by DPZ, (3) while the Board correctly stated that the burden of proof was on appellant, it ignored that burden and did not address the waiver criteria contained in section 16.116, and (4) the decision of DPZ was supported by substantial evidence, and thus, the Board's decision was arbitrary and capricious. With respect to the last point, the court also

---

**3.** Additional facts pertaining to the motion to intervene will be set forth when we address that issue.

stated that the court could not substitute its judgment "for that of the administrative agency, i.e., DPZ." [4]

## Contentions of the Parties

Appellant contends that the circuit court and this Court are required to review the decision of the Board and not the decision of DPZ. Appellant further contends that the Board's standard in reviewing DPZ's decision was, if not a pure *de novo* standard, something less deferential than the judicial standard of review that we are bound to apply. According to appellant, the Board applied the correct standard, and was free to consider the evidence before it and apply the facts to the law as it deemed appropriate in fashioning an appropriate remedy. In addition, appellant contends that there is substantial evidence to support the Board's decision. Finally, appellant argues that the circuit court erred in granting the motion to intervene.

Appellee contends that DPZ is the agency responsible for enforcing the laws governing the subdivision of land and that the Board must apply a deferential standard of review when reviewing DPZ's decisions. According to appellee, the Board erred as a matter of law in basing its decision on nonsubstantive errors in DPZ's denial letter, in establishing its own standard of "public interest," and in ignoring that the burden of proof was on appellant. Alternatively, appellee contends that the Board's reasons for reversal were not supported by evidence in the record. Finally, appellee contends that the issues relating to self-created hardship and the public interest standard were not preserved because they were not raised by appellant in its petition to appeal DPZ's denial to the Board.

---

4. It is not clear to us whether the court applied what was in essence the judicial standard of review to the Board's review of DPZ's decision and/or reviewed DPZ's decision, as distinguished from reviewing the Board's decision. It is not necessary that we determine that issue with certainty because our function is to review the Board's decision, not that of the circuit court.

## Issues Presented

As rephrased by us, the issues that we must decide are:

1) whether the Board applied the correct standard of review;

2) whether the Board's decision was supported by legally sufficient evidence and/or set forth sufficient findings to support its conclusions; and

3) whether the circuit court erred in granting the motion to intervene.

## Right to Judicial Review

■ On appeal to this Court, appellant raises no issue with respect to appellee's right to seek judicial review of DPZ's decision.[5] Nevertheless, because it is a jurisdictional question, we shall comment on it briefly.[6]

Appellee's petition for judicial review stated that Howard County, through its Department of Planning and Zoning, was seeking review of the Board's decision. This statement is ambiguous with respect to whether the petitioner was DPZ or the County. Moreover, a review of the motion papers filed in circuit court and the circuit court's order denying the motion adds to the uncertainty because the conclusion that the County had standing relied on a hybrid analysis of the County's and DPZ's functions and rights. Nevertheless, we read the pleadings as indicating that Howard County, representing the interests of DPZ, was the petitioning party. We will review relevant statutes and case law to determine whether the

---

**5.** When the County filed its petition for judicial review in the circuit court, appellant sought to dismiss it on the basis that the County did not have standing to seek judicial review of the Board's decision. The lower court denied appellant's motion to dismiss, finding that the County did have standing based on statutory authority and case law.

**6.** We recognize that seeking judicial review of an agency decision requires invoking the original jurisdiction of the circuit court, but in this context, our analysis discusses the right as if it were an appeal because that is the way it is referred to in the relevant statutes and county code provisions.

circuit court properly exercised jurisdiction when the County sought judicial review of its Board's decision.

As a starting point, we recognize that it is well established in this State that the right of appeal is wholly statutory. *Howard County v. JJM*, 301 Md. 256, 261, 482 A.2d 908 (1984) (citing *Maryland Bd. v. Armacost*, 286 Md. 353, 354–55, 407 A.2d 1148 (1979); *Criminal Inj. Comp. Bd. v. Gould*, 273 Md. 486, 500, 331 A.2d 55 (1975); *Urbana Civic v. Urbana Mobile*, 260 Md. 458, 461, 272 A.2d 628 (1971)). Section 5(X) of Article 25A of Maryland's Code authorizes Howard County, as a charter county, to enact local laws "relating to zoning and planning including the power to provide for the right of appeal of any matter arising under such planning and zoning laws to the circuit court. . . ." Md.Code (2001 Repl.Vol.), art. 25A, § 5(X). Article 25A, section 5(U) provides for an appeal to a board of appeals by any "interested person" and for an appeal from the board to circuit court by a party before the board and "aggrieved" by it. The section also provides that a party in the circuit court proceedings may appeal to this Court. Pursuant to this express grant of power by the General Assembly, Howard County has adopted various charter and code provisions that define the right of appeal from a decision by the Board to the circuit court.

Howard County Charter section 501(d) provides for a right of appeal from the Board to the circuit court by any "person, officer, department, board or bureau of the County . . . aggrieved" by the decision. Howard County Code section 2.211(e), governing the Board's rules of procedure, also provides for a right of appeal from decisions of the Board using the same language as the charter.

Howard County Zoning Regulations section 130(D), discussing court review, provides for an appeal from the Board to circuit court, and from circuit court to this Court. The appeal from the Board may be by "[a]ny person, persons, taxpayer, officer, department, board or office of the County . . . aggrieved" by the decision of the Board. Section 130(A)(2), discussing the Board's powers generally, provides for an ap-

peal to the Board by "any person aggrieved, or by any officer, department, board or bureau of the County affected by any decisions of the Department of Planning and Zoning." We note that the latter provision does not seem to apply to an appeal by or on behalf of DPZ itself, but in addition, it is far from certain that the zoning provisions apply to the case before us because it involves a planning/subdivision issue.

Howard County Code section 16.105, which discusses the right of appeal in matters involving the subdivision and land development regulations, permits appeals to the Board by "[a] person specially aggrieved by an order of the Department of Planning and Zoning," and then permits appeals to the circuit court "[i]f the appellant continues to be aggrieved by the decision of the Board. . . . "

In summary, while all of the above provisions may not be totally consistent, there appears to be a broad list of entities that can seek judicial review, subject of course to the requirement that the entity be "aggrieved" in order to obtain judicial review. In *T & R Joint Venture v. OPZ*, 47 Md.App. 395, 424 A.2d 384 (1980), we recognized that "[t]he condition of 'aggrievement,' of being 'aggrieved,' is a common prerequisite in the laws relating to administrative appeals, and particularly in zoning cases." *Id.* at 401, 424 A.2d 384. Citing the test first set forth in *Bryniarski v. Montgomery County*, 247 Md. 137, 144, 230 A.2d 289 (1967) (providing guidelines as to who is or is not "aggrieved"), we noted that:

> Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally. The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review.

*Id.* (quoting *Bryniarski,* 247 Md. at 144, 230 A.2d 289) (citation omitted). Using the *Bryniarski* test, we determined that "a public official, agency, or entity is not legally 'aggrieved' by virtue of alternative personal or property rights merely because it has public duties and responsibilities of one sort or another, or because it represents the citizens of the subdivision." *Id.* at 402, 424 A.2d 384. In *T & R,* Anne Arundel County, in conjunction with its Office of Planning and Zoning ("OPZ"), argued that it was aggrieved because if the land were rezoned, OPZ would be required to make major revisions to its master plans. *Id.* at 403, 424 A.2d 384. This Court rejected that argument, holding that "[t]hat is clearly not the type of special interest, or personal property right, required under the cases." *Id.* ("Many people—public officials and private individuals—are put to extra work, or inconvenience, or even expense by zoning decisions; but that does not necessarily make them 'aggrieved' in the legal and statutory sense.").

More recently, in *M–NCPPC v. Smith,* 333 Md. 3, 633 A.2d 855 (1993), the Court of Appeals recognized that "[a]n agency may maintain an appeal in those cases involving the agency's role in protecting the public interest," but held that the agency in question was not aggrieved by the Board's decision rejecting its recommendations and could, therefore, not maintain an appeal. *Id.* at 13–14, 633 A.2d 855. In *Smith,* property owners applied for a building permit, and pursuant to Prince George's County zoning ordinances, commissioners from the Maryland–National Capital Park & Planning Commission ("Commission") reviewed the application and recommended denial of the permit. *Id.* at 5, 633 A.2d 855. The owners appealed to the Board of Appeals, which reversed the denial of the permit. *Id.* at 6, 633 A.2d 855. When both the Commission and the County appealed the Board's decision, the owners moved to dismiss for lack of standing, and the motion was granted as to the Commission. *Id.* On appeal from that decision by the trial court, the Court of Appeals affirmed the lower court's granting of the motion to dismiss, reasoning that the Commission could not establish that it was aggrieved by

the Board's reversal of its recommendation. *Id.* at 11–19, 633 A.2d 855. The Court explained that "[t]he Commission will not suffer any property loss, or be compelled to act based on the board's decision. The only possible injury is the arguable indignity of having a recommendation rejected." *Id.* at 12, 633 A.2d 855.

In the case before us, it is very arguable that the County, acting on behalf of DPZ, does not fit the definition of "aggrieved" as discussed in *T & R* and *Smith*.

As previously indicated, Article 25A, section 5(U) requires that an entity be a party to the proceeding before the board and be aggrieved by the board's decision in order to be able to appeal the board's decision to circuit court. In addition to the question of aggrievement, which we will revisit before concluding our discussion, there is the question of party status. Under the applicable provisions, there is no right of appeal unless one is a party. *See* Md.Code art. 25A, § 5(u); *Montgomery County v. One Park North Associates*, 275 Md. 193, 201–02, 338 A.2d 892 (1975). The County is asserting DPZ's position, however, and DPZ was a party before the Board. Because Howard County is a body corporate pursuant to its charter, and for that reason may have had to file the petition for judicial review in its name, we hold that the "party" requirement is satisfied.

Aside from the provisions addressing the right to appeal to and from a Board's decision, there is another possible basis for finding that the County had the right to seek judicial review. This stems from a statutory provision that grants the County general power to enact and enforce local legislation. Md.Code (2001 Repl.Vol.), art. 25A, § 5(A). In addition to section 5(A)'s broad grant of powers, Howard County's charter section 904 provides that "the County shall have all powers necessary and convenient for the conduct of its affairs . . . ." Section 904 has previously been relied on by the Court of Appeals as a catchall provision granting the County the authority to appeal a decision by the Board on behalf of its Office of Planning and Zoning in order to defend its subdivision regulations against

charges of unconstitutionality. *See Howard County v. JJM,* 301 Md. 256, 261–63, 482 A.2d 908.

*JJM* is distinguishable from the case at hand, however, because there the County did not seek judicial review of the Board's decision in circuit court but only sought to appeal the circuit court's decision that one of the county's code provisions was unconstitutional. *Id.* at 259–61, 482 A.2d 908. In the present case, we are asked to determine whether the County had the right, on behalf of DPZ, to seek judicial review of the Board's decision in circuit court, not on the issue of the constitutionality of the code provisions, but on the basis of whether the Board erred in reversing DPZ's denial of the waiver.

Before concluding this discussion, we recognize another line of cases exemplified by *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73 (1945), and *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 331 A.2d 55 (1975). Those cases stand for the proposition that, in the absence of a statutory right of appeal, judicial review of an administrative agency's decision may be appropriate. Such review may be by application for mandamus, certiorari, or otherwise, but a petition for judicial review may be treated as such if it alleges arbitrary, capricious, illegal, or unreasonable action by the agency. *Gould,* 273 Md. at 513, 331 A.2d 55; *see also City of Seat Pleasant v. Jones,* 364 Md. 663, 774 A.2d 1167 (2001). This doctrine is based on the fact that courts have inherent power to review and correct actions by an administrative agency that are arbitrary, capricious, illegal, or unreasonable. *Gould,* 273 Md. at 501, 331 A.2d 55.

In the case before us, there is a statutory right to appeal. The question is one of standing. Under the *Gould* line of cases, a party seeking judicial review presumably still needs standing to do so successfully. Standing is not limited, however, to situations where there is an impairment of personal or property rights, at least not in the traditional sense. *Id.* at 508, 331 A.2d 55.

The State Administrative Procedure Act, while not applicable here, requires that an entity seeking judicial review be both a party and "aggrieved." *See* Md.Code (2001 Repl.Vol.), State Gov't § 10–222(a)(1). The facts necessary to satisfy the aggrieved requirement, when the petitioner is a governmental entity, appear to be that it have an interest in interpreting, administering, and enforcing the laws in question in a given case. *See Maryland Real Estate Commission v. Johnson,* 320 Md. 91, 576 A.2d 760 (1990) (the State Real Estate Commission had standing to appeal from a circuit court decision and was aggrieved because a fund it managed would be required to disburse funds to claimants, it had the power to investigate claims, and to punish violators.) This approach has been followed with respect to local and not State agencies. *See Calvert County Planning Commission v. Howlin Realty Management, Inc.,* 364 Md. 301, 772 A.2d 1209 (2001); *Board of Liquor v. Hollywood,* 344 Md. 2, 684 A.2d 837 (1996); and *Carroll County v. Lennon,* 119 Md.App. 49, 703 A.2d 1338 (1998).

We conclude that when an agency's action is alleged to be arbitrary, capricious or illegal, the requirement of standing or "aggrieved" is a low threshold. *See Board of License Commissioners v. Corridor Wine, Inc.,* 361 Md. 403, 411, 761 A.2d 916 (2000) (In the absence of a statutory provision for judicial review of a final decision by an administrative agency, certiorari or mandamus "is normally available for ordinary 'substantial evidence' judicial review of the adjudicatory administrative decisions"). *But see State v. Board of Education,* 346 Md. 633, 644, 697 A.2d 1334 (1997) (noting that the legislature could preclude judicial review of a dispute between the State and a State agency). We also conclude that the current view is that a governmental entity, including a local entity, with an interest in administering the laws in question is aggrieved.

*Howlin Realty, supra,* is not exactly on point because the question was whether the county planning commission could be a party in circuit court after the property owner petitioned

for judicial review. Nevertheless, the Court held that the planning commission had standing to be a party because it had substantial control over the subdivision of land within the county, and as such, was charged with implementing important public policy. *Id.* at 320, 772 A.2d 1209.

We have not been able to find any authorities on point in that most of the cases involving a government agency deal with the absence of a statutory right to seek judicial review, the right to appeal from circuit court to this Court, or whether the agency is barred from judicial review because it exercises quasi-judicial functions. Based on the general powers and obligations of the County to enforce and maintain its laws, and relying primarily on the reasoning in *Howlin Realty*, we conclude that the County did have the power and standing to seek judicial review on behalf of DPZ.

## Standard of Review

The parties do not dispute the applicable judicial standard of review. Accordingly, we will quote from this Court's recent decision in *Stover v. Prince George's County*, 132 Md.App. 373, 752 A.2d 686 (2000), to articulate the applicable standard of review of an administrative agency's decision:

> When reviewing a decision of an administrative agency, this Court's role is "precisely the same as that of the circuit court." *Department of Health and Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303–304, 641 A.2d 899 (1994) (citation omitted). "Judicial review of administrative agency action is narrow. The court's task on review is not to 'substitute its judgment for the expertise of those persons who constitute the administrative agency.'" *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 576–577, 650 A.2d 226 (1994) (quoting *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119 (1978)).
>
> Rather, "to the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test." *Department of Health and Mental Hygiene v. Riverview*

*Nursing Centre, Inc.,* 104 Md.App. 593, 602, 657 A.2d 372, *cert. denied,* 340 Md. 215, 665 A.2d 1058 (1995) (citation omitted). The reviewing court's task is to determine "whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions." *Maryland Commission on Human Relations v. Mayor and City Council of Baltimore,* 86 Md.App. 167, 173, 586 A.2d 37, *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991). The court cannot substitute its judgment for that of the agency, but instead must exercise a "restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions." *State Administration Board of Election Laws v. Billhimer,* 314 Md. 46, 58–59, 548 A.2d 819 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989) (quoting *Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.,* 313 Md. 614, 625, 547 A.2d 190 (1988)).

The reviewing court's analysis has three parts:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, i.e., by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. At this juncture, ... "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference."

3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ...

a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]."

*Comptroller of the Treasury v. World Book Childcraft Int'l, Inc.*, 67 Md.App. 424, 438–439, 508 A.2d 148, *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986) (quoting *Ramsay, Scarlett & Co., Inc. v. Comptroller of the Treasury*, 302 Md. 825, 834–838, 490 A.2d 1296 (1985)).

*Id.* at 380–81, 752 A.2d 686.

## Discussion

### 1.

As a preliminary point, we agree with appellant that it is the Board's decision, the final administrative decision, that we are required to review. *See Dep't of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 301–02, 641 A.2d 899 (1994) ("When reviewing an agency's decision overruling an ALJ's recommendation, the question is not 'whether the agency erred' in overruling the ALJ but whether there is substantial evidence for the agency's decision.").

The next issue that we must determine is whether the Board applied the appropriate standard of review when it reviewed DPZ's decision. Appellee urges us to hold that the Board was bound to a deferential standard of review similar to our judicial standard of review. Appellant, on the other hand, acknowledges that the Board's standard of review is not purely *de novo* in that it requires the Board to determine whether DPZ's decision was arbitrary, capricious or contrary to law before arriving at its own conclusions, but it does not agree with appellee's limited view of the Board's powers. Our determination of this issue centers on our understanding of the relevant statutory framework, including a Maryland statute, the Howard County Charter, the Howard County Code, and Howard County Zoning Regulations, which we will review below.

## Relevant Statutes and Regulations[7]

Our examination of the statutory scheme begins with article 25A, section 5(U) of Maryland's Annotated Code, entitled "County Board of Appeals," which empowers Charter counties:

[t]o enact local laws providing (1) for the *establishment of a county board of appeals* ... and (4) [allows] *for the decision by the board* on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance or regulation of, or subject to amendment or repeal by, the county council, [including] ... the issuance, renewal, *denial,* revocation, suspension, annulment, or modification of any license, permit, approval, exemption, *waiver,* certificate, registration, or other form of permission or of any adjudicative order....

Md.Code (2001 Repl.Vol.), art. 25A, § 5(U) (emphasis added). In addition to granting broad powers to a board of appeals regarding original and appellate jurisdiction, subsection 5(U) also requires that any opinion by a board include a statement of the facts found and the basis for its decision. Finally, the statute recognizes the right of an aggrieved party to appeal the decision of a board to the circuit court, and then to this Court. *Id.*

Pursuant to the broad grant of powers by the state statute, section 501 of Howard County's Charter states in pertinent part:

(b) *Powers and functions.* The Board of Appeals may exercise the functions and powers relating to the hearing and deciding, either originally or on appeal or review, of

---

7. The statutes, code provisions, and regulations discussed are considered in the form in which they appeared at the time of the appeal to the Board. Subsequent changes to the Charter and Code may be discussed if relevant.

such matters as are or may be set forth in Article 25A, Subparagraph (u) of the Annotated Code of Maryland,. . . .

(c) *Rule of practice and procedure.* The Board of Appeals shall have the authority to adopt and amend rules of practice governing its proceedings which shall have the force and effect of law when approved by legislative act of the Council. Such rules of practice and procedures shall not be inconsistent with the Administrative Procedures Act, Article 41, of the Annotated Code of Maryland. . . . All matters which come before the Board pursuant to its exercise of original jurisdiction shall receive a de novo hearing on all issues. Those matters coming before the Board pursuant to an appeal from an executive, administrative or adjudicatory order wherein a formal hearing was held verbatim on the record developed shall be reviewed by the Board on the basis of the record before it.

These provisions are relevant in understanding the present dispute because they recognize the distinction between a *de novo* appeal and an appeal on the record and require that the Board's rules of practice and procedure not be inconsistent with the requirements set forth in Maryland's Administrative Procedure Act.

Next, we turn to Title 2 of Howard County's Code, which contains administrative procedures generally and the Board's rules of procedure specifically. Subtitle 2, entitled "Rules of Procedure of the Board of Appeals," addresses various topics, including organization of the Board, requirements for petitions to the Board, how notice to the public must be provided, and how meetings and hearings are conducted through the introduction of evidence and motions, as well as testimony by the parties. The subtitle begins by explaining that "these rules are in addition to the requirements of section 501 of the Howard County Charter; subtitle 3, "Board of Appeals," of title 16 of the Howard County Code; and the Howard County Zoning Regulations. *See* § 2.200. Section 2.210 is important in the present case because it governs the conduct of administrative appeal hearings, distinguishing between *de novo* appeals and appeals on the record. Section 2.210(a)(4) sets forth

the burden of proof applicable to different types of *de novo* appeals, stating:

   (i) In an appeal of an administrative agency's issuance of a notice of violation of county laws and regulations, the burden of proof is upon the administrative agency (proponent) to show, by a preponderance of the evidence, that the respondent has violated the laws or regulations in question. However, it shall be the respondent's burden to prove all affirmative defenses, including the defense of nonconforming use.

   (ii) In all other *de novo* appeals, the burden of proof is upon the appellant to show that the action taken by the administrative agency was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law.

Subsection (b) contains the burden of proof applicable to appeals on the record, the same standard applicable to *de novo* appeals from administrative agencies.

Pertinent to the issues in this case, Title 16 of Howard County's Code contains the County's "Planning, Zoning and Subdivisions and Land Development Regulations." Although Title 16 contains the requirements for a waiver and other substantive issues in this case, it also provides rules and procedures governing the Board's role in this context. *Compare* § 16.104 (Waivers); § 16.116 (Protection of wetlands, streams, and steep slopes); § 16.1200 (Forest conservation), *with* § 16.105 (Appeals); § 16.300 (Board of Appeals). First, section 16.105 explains that "a person specially aggrieved" by an order of DPZ may appeal to the Board in accordance with section 501 of the Charter. Next, subtitle 3 of title 16 lays out the Board's powers in the context of planning, zoning, subdivisions, and land development.[8] Section 16.301 provides that

---

8. Subtitle 3 was amended in 2000, creating the position of hearing examiner to hear and decide some matters that were previously heard by the Board exclusively. The changes provide for the hearing examiner to initially hear matters where the Board has original jurisdiction or where there was no hearing below. On the other hand, the Board continues to hear and decide appeals where there has already been an opportunity for a contested case hearing. The amendments further

the Board has the power "[t]o hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by any administrative official in the application, interpretation, or enforcement of this title or of any regulations adopted pursuant to it."

Finally, section 130(B)(4) of Howard County's Zoning Regulations also contains a section pertaining to the Board of Appeals, which provides that the Board may "hear and decide appeals where it is alleged the Department of Planning and Zoning has erred in the interpretation or application of any provisions of the Zoning Regulations."

■ We conclude that, read as a whole, these provisions mean that the Board's standard is not as deferential as the judicial standard but is not a purely *de novo* proceeding. The Board expressly applied section 2.210(a)(4)(ii) and recognized that it was required to consider DPZ's decision and treat it as correct unless, based on the facts found from the evidence, the Board determined that DPZ's decision was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law. The provision in question is one of the Board's own rules of procedure. We reach our conclusion, having given due deference to the Board's interpretation and application of its rule of procedure. The question is not one of substantive law to which no deference is owed.

Besides the reference in section 2.210(a)(4)(ii) to the burden of proof of the appellant to show that DPZ's action was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law, none of the code provisions and regulations addressing the Board's role in administrative appeals limit its powers. Notably, the County Charter distinguishes between *de novo* appeals and appeals on the record[9] and requires that the

clarify the applicable burden of proof to be used by both the hearing examiner and the Board. These revisions suggest that the County recognized that there was some confusion regarding the existing appeal procedures and attempted to clarify the Board's role.

9. According to the Charter, where there is a formal hearing below and a verbatim record developed, except in certain circumstances, the

Board's procedures comply with the requirements of Maryland's Administrative Procedure Act. These are important features because, when a county law provides for a hearing, due process requires that it be a meaningful hearing. In this case, the hearing before the Board is the first hearing. Under these circumstances, the Board's role is more akin to a second tier administrative agency, rather than a first tier judicial reviewer, as appellee suggests. This approach is also consistent with other provisions contained in section 2.210, which explain how to conduct a *de novo* appeal, and with section 16.301, which permits the Board to hear and decide appeals when it is alleged that DPZ committed error, without providing further limitation on the Board's powers.

Our analysis of whether the Board applied the correct standard of review requires that we determine the nature and scope of the remedy that the Board was permitted to afford when it found that DPZ's decision was arbitrary and capricious. Appellant argues that, under the statutory scheme, the Board provides checks and balances on DPZ's regulatory power and that the nature and scope of the *de novo* appellate proceeding is designed to and permits the Board to correct any error. Appellee, on the other hand, argues that the Board was required to remand the matter to DPZ even after it found its decision was arbitrary and capricious.

■ We believe that the Board had the authority to grant the waiver if its own findings were sufficient to support such a conclusion. First, under the applicable standard of review, the Board was entitled to make its own findings and apply the facts to the law. In addition, in the absence of any express language in any of the Code provisions suggesting that the Board's power was limited to the determination of whether DPZ's decision was arbitrary or unlawful, there is no reason to believe that the Board did not have the substantive power to fashion an appropriate remedy. Further, subsequent revi-

Board does not hold *de novo* evidentiary hearings but reviews the record for error. This type of appeal on the record is clearly distinguishable from a *de novo* appeal.

sions to section 2.210 have included the addition of a subsection (c), which provides that "[t]he Board may dismiss the administrative appeal or may affirm, reverse, or modify the agency's action, remand the action to the agency for further proceedings, or an appropriate combination of the above." If there was no procedural tool available before, on remand, this new rule of procedure appears to provide the Board with the authority to grant the waiver.

2.

Given our conclusion that the Board, in its opinion, applied the correct standard, we must now apply our standard of review to determine whether the Board's decision was sufficient in terms of its findings and conclusions. The Court of Appeals' decision in *United Steelworkers of America v. Bethlehem Steel Corp.*, 298 Md. 665, 472 A.2d 62 (1984), provides a brief explanation about our role in determining whether a decision by an administrative agency can be upheld based on the agency's findings and conclusions:

Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

*Id.* at 679, 472 A.2d 62 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Harborlite Corp. v. I.C.C.*, 613 F.2d 1088, 1092–93 (D.C.Cir.1979); *Int'l Paper Co. v. Fed. Power Comm'n*, 476 F.2d 121, 128 (5th Cir.1973); *USV Pharmaceutical Corp. v. Secretary of Health, Educ. & Welfare*, 466 F.2d 455, 461–62 (D.C.Cir.1972); *Marco Sales Co. v. FTC*, 453 F.2d 1, 7 (2d Cir.1971); *Davis v. Weinberger*, 390 F.Supp. 813, 816 (M.D.Pa.1975); *Blodgett Uncrated Furniture Serv., Inc. v.*

*United States,* 288 F.Supp. 591, 598–99 (W.D.Mich.1968); *Bell Lines, Inc. v. United States,* 263 F.Supp. 40, 44–46 (S.D.W.Va. 1967); 3 Davis, Administrative Law Treatise § 14:29 (2d ed.1980)).

The two conclusions that we must test for sufficiency are 1) whether DPZ's decision was arbitrary and capricious, and 2) whether appellant's waiver request should be granted. We hold that the Board's first conclusion is sustainable, but its second conclusion is not.

■ The Board's reasons for concluding that DPZ's decision denying appellant's waiver petition was arbitrary and capricious were that the denial letter 1) cited law that was not yet in effect as a basis for denying the waiver request, 2) inappropriately captioned the second basis for denying the waiver as "self-created hardship," where evidence presented by appellant demonstrated that the hardship was created by the existence of the stream and not by appellant's subdivision of the property into lots, and 3) stated that the waiver would be detrimental to the public interest because of the proposed lot sizes and configurations, when the public interest issues should have been decided based on environmental impact.

With respect to the reference in DPZ's denial letter to legislation not yet in effect, the Board had before it testimony—not just the letter—and characterized the reference as a "basis" for denying the waiver request. The Board did not characterize it as an error in transcription, as appellee suggests. Similarly, the Board did not find that the reference to "self-created hardship" was an error in transcription and referred to evidence that the hardship was created by the stream and not by the creation of lots. Finally, with respect to the factors relevant to "public interest," the Board concluded that lot sizes and configurations permitted by the zoning regulations had nothing to do with the environmental impact of the proposed stream crossing. This interpretation of the applicable regulations is also owed deference. *See, e.g., Board of Physician Quality Assur. v. Banks,* 354 Md. 59, 69, 729 A.2d 376 (1999) (recognizing that "an administrative agency's

interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts") (citing *Lussier v. Md. Racing Comm'n,* 343 Md. 681, 696–697, 684 A.2d 804 (1996), and cases therein). Applying the judicial standard of review to the Board's decision, we cannot hold that the Board applied an incorrect principle of law or itself acted arbitrarily in concluding that these reasons were arbitrary.[10]

■ Consequently, had the Board simply remanded the matter to DPZ for further consideration, we could affirm the Board. The Board granted the waiver request, however, and in doing so, it was required to set forth findings of fact and conclusions of law sufficient to affirm its decision. *See United Steelworkers of America v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984); *see also* Md.Code, art. 25A § 5(U) (explaining that when a board files an opinion, it must include a statement of the facts founds and the grounds for its decision) and Howard County Code § 2.211(b) (requiring that the board's decision be accompanied by findings of fact and conclusions of law). The Board's opinion does not contain the necessary findings to sustain the Board's conclusion that the

---

**10.** We also find no merit in appellee's contention that the Board erred in reversing DPZ's decision because the self-created hardship and public interest issues were not specifically mentioned by appellant in its petition to appeal DPZ's denial. Although the two cases cited by appellee in support of its contention do state that a board's review is limited to those issues presented on appeal, their discussion of what is considered an "issue" reflects a broad interpretation that is intended to limit the board from reversing decisions by the lower body that were not challenged by appellant. *See Halle v. Crofton Civic Ass'n,* 339 Md. 131, 145–46, 661 A.2d 682 (1995) ("The access issue was so inextricably intertwined with the administrative hearing officer's decision that it was an issue properly before the Board which could be addressed."); *Daihl v. County Board of Appeals,* 258 Md. 157, 161–64, 265 A.2d 227 (1970). In the present case, appellant alleged both specific and general factual errors in its petition, all in support of the contention that DPZ's denial letter was arbitrary and capricious. *See Halle,* 339 Md. at 138, 661 A.2d 682 (recognizing that the Board can address new issues, but "cannot, however, indiscriminately entertain matters which in effect change the nature of the original controversy or application"). The fact that the Board's reversal was not based solely on the errors alleged by appellant does not mean that it erred as a matter of law.

waiver criteria had been met. *See* Howard County Code § 16.104 (setting forth the necessary requirements for granting a waiver). Accordingly, we must remand to the Board to either remand to DPZ or to set forth findings and conclusions sufficient to justify why the waiver should be granted.

## 3.

Appellant's final claim is that the circuit court erred in granting the motion to intervene. We will briefly set forth the facts relevant to the motion and the Rule 2–214 requirements governing intervention rights and will then explain why we hold that the circuit court did not err in granting the motion.

On September 28, 2000, more than two months after the Board issued its decision reversing DPZ's denial letter, Ann von Lossberg, Richard Breen, Jennifer–Bean Dempsey, Ronald Dempsey, and Jeffrey Quillen ("Intervenors"), pursuant to Rule 2–214, moved for leave to intervene as of right in circuit court. In their petition, intervenors alleged that as adjacent or nearby property owners of the proposed subdivision, they were necessarily affected and therefore "aggrieved" parties. They also alleged that they had been denied the right to participate in the hearings before the Board[11] and that they should be afforded a right to be a party in the matter because their interests could not be adequately represented by the County, and further that they would be able to provide valuable testimony about the "detriment to the public interest," one of the criteria for waiver.

---

**11.** Intervenors' attempt to participate in the hearings came in the form of a letter to the Board after its first hearing but before the other three. Ann von Lossberg, President of the Gwynn Acres community association, wrote to the chairperson of the Board, asking if it would be possible for the community to be heard at the next hearing on the issue of the impact that the stream crossing would have on them. The letter also mentioned the Hikmat appeal's potential effect on an appeal that the community association was also pursuing before the Board and suggested that a decision in the RAFAT appeal could preclude their appeal. The Board denied the community association's request to testify, stating that only parties to the appeal were permitted to testify, and that their only opportunity to testify would be if either DPZ or Hikmat called one of the community members as a witness.

After a hearing on the matter, the circuit court, on April 13, 2001, granted the motion to intervene, finding that the intervenors were entitled to intervene as of right, based on their satisfaction of the requirements of Rule 2–214(a)(ii). Although the court first recognized that the intervenors did not have an unconditional right to intervene as a matter of law because they were not parties to the underlying proceeding, it went on to conclude that the intervenors' motion was timely and that they satisfied the "protectible interest" and "Interest–Analysis" tests used in determining compliance with Rule 2–214(a)(ii).

Rule 2–214(a)(ii) provides that, "[u]pon timely motion, a person shall be permitted to intervene in an action … when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties." In this Court's decision in *Chapman v. Kamara*, 118 Md.App. 418, 702 A.2d 977 (1997), we stated that the appropriate standard of review for an intervention as of right is whether the lower court committed error. *Id.* at 427, 702 A.2d 977. We also discussed the four requirements that a party moving for intervention as of right must demonstrate: 1) the application for intervention must be timely, 2) the applicant must have an interest in the subject matter of the action, 3) the disposition of the action must at least potentially impair the applicant's ability to protect its interest, and 4) the applicant's interest must be inadequately represented by the existing parties. *Id.*

Recognizing that a timely application is a prerequisite for intervention, the circuit court determined that intervenors' motion was timely, using the factors set forth in *Maryland Radiological Society v. Health Services*, 285 Md. 383, 388–89, 402 A.2d 907 (1979) (noting that all relevant circumstances should be taken into account). Next, the circuit court concluded that the second and third requirements (relating to whether intervenors had a "protectible interest") were met based on

intervenors' status as adjoining property owners and because of the threat of increased erosion and greater flooding if appellant's waiver request was granted. Finally, applying the "Interest–Analysis" test set forth in *Maryland Radiological Society,* 285 Md. at 390–91, 402 A.2d 907, the circuit court found that intervenors' interest in the case was similar to that of the County, but not identical, and that it was not clear that the County would provide adequate representation for intervenors. We are satisfied that the circuit court did not err in concluding that all four requirements were met by intervenors.

On remand to the Board, the Board shall determine whether and to what extent the intervenors may participate in proceedings before it.

**JUDGMENT REVERSED IN PART AND AFFIRMED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH INSTRUCTIONS THAT IT BE REMANDED TO THE BOARD OF APPEALS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**