978 A.2d 622

**GRASSLANDS PLANTATION, INC.**

v.

**FRIZZ–KING ENTERPRISES, LLC.**

**No. 117, Sept. Term, 2008.**

Court of Appeals of Maryland.

Aug. 25, 2009.

Philip W. Hoon (Hoon & Associates, LLC of Chestertown), on brief, for petitioner.

Richard A. DeTar (Demetrios Kaouris of Miles & Stockbridge, P.C. of Easton), on brief for respondent.

Thomas A. Deming, for Brief of Amici Curiae Queen Anne's Conservation Association, Inc. and Chester River Association Inc.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

In this Queen Anne's County zoning case, we decide how to allocate the burden of proof in a *de novo* review by the Board of Appeals of the Planning Commission's decision approving a subdivision.[1] We hold that the Board erred in imposing the burden on the adjacent landowner protestant. We also address the question of whether a county ordinance passed during pendency of the protestant's judicial appeal, which amended the standards by which the Commission is to evaluate proposed subdivisions, should be applied to this subdivision application. We hold that, under these circumstances, the new county ordinance should apply to the proceedings on remand.

## FACTS AND LEGAL PROCEEDINGS

The respondent, Frizz–King Enterprises, LLC ("Frizz–King"), is the owner of approximately 275 acres located in an agricultural zoning district in Queen Anne's County. In 2004,

---

1. In this opinion, we shall usually refer to the Board of Appeals as "the Board," the Planning Commission as "the Commission," and Queen Anne's County as "the County."

Frizz–King initiated a process to construct a subdivision called "The Highlands" near Chestertown, Maryland. The proposed subdivision clusters fifty residential units within approximately 64 acres of the 275 acre property, using noncontiguous development, a permitted technique for achieving greater density in one defined area.[2] Frizz–King obtained an adequate public facilities ("APF") study pursuant to the County's then-in-effect Adequate Public Facilities Ordinance to determine the subdivision's impact on water, sewer, traffic and schools. Upon receiving an approval of the APF study from the Technical Review Committee, Frizz–King submitted an application to the Commission for a subdivision with 114 lots. Frizz–King then redesigned the project into a phased project, with phase one consisting of fifty lots. The petitioner, Grasslands Plantation, Inc. ("Grasslands"), owns a property known as "Grasslands Plantation" adjacent to the proposed subdivision property.

### *The Planning Commission Proceedings*

Grasslands opposed the subdivision in a series of hearings before the Commission. In a hearing on April 13, 2006, after which the Commission granted its final approval, Grasslands challenged the proposed subdivision, principally through the oral and written testimony of Dr. Eileen McLellan, a consultant with a background in environmental science and policy. Dr. McLellan asserted that the proposed subdivision was incompatible with (1) Maryland Code (1957, 2003 Repl.Vol.),

---

2. Under the Queen Anne's County Code ("QACC"), "[a] landowner or group of landowners whose lots are in the same zoning district, but are not contiguous, may file a development plan ... in the same manner as the owner of a single lot." QACC § 18:1–98 A. The County's noncontiguous development ("NCD") technique allows a land developer to combine the acreage of the developed parcel and noncontiguous parcels when implementing zoning district open space and resource protection requirements in a subdivision plan. *See* QACC §§ 18:1–98 B and F. The NCD technique also permits a developer to combine the area of the developed parcel and noncontiguous parcels for the purpose of computing base site area, which increases the number of buildable lots on the developed parcel. *See* QACC § 18:1–98 C.

Article 66B, Sections 1.01 and 11.01,[3] (2) specific policies in the Queen Anne's County Comprehensive Plan, and (3) provisions in Title 18 of the Queen Anne's County Code ("QACC"). Both Dr. McLellan and Grasslands's counsel argued that Frizz–King's use of the County's noncontiguous development ("NCD") program, was incompatible with the County's Comprehensive Plan policy to keep rural lands rural and preserve agricultural lands, because the agricultural parcel proposed for subdivision is not located in an area designated for growth.[4] Dr. McLellan also argued the subdivision was incompatible because, *inter alia*, (1) the subdivision's planned architecture, use of cul-de-sacs, and landscaping did not employ an appropriate rural design and (2) that the subdivision could be "redesigned to incorporate Low Impact Design practices rather than rely upon engineered stormwater structures." Dr. McLellan explained that a design which locates

---

3. Maryland Code (1957, 2003 Repl.Vol.), Article 66B ("Article 66B"), Section 1.01 provides:

 In addition to the requirements of § 3.05(c) of this article, a commission shall implement the following visions through the plan described in § 3.05 of this article:

 (1) Development is concentrated in suitable areas.

 (2) Sensitive areas are protected.

 (3) In rural areas, growth is directed to existing population centers and resource areas are protected.

 (4) Stewardship of the Chesapeake Bay and the land is a universal ethic.

 (5) Conservation of resources, including a reduction in resource consumption, is practiced.

 (6) To assure the achievement of items (1) through (5) of this section, economic growth is encouraged and regulatory mechanisms are streamlined.

 (7) Adequate public facilities and infrastructure under the control of the county or municipal corporation are available or planned in areas where growth is to occur.

 (8) Funding mechanisms are addressed to achieve these visions.

 Article 66B, Section 11.01 states that a local legislative body "may establish a program for the transfer of development rights to: (1) Encourage the preservation of natural resources; and (2) Facilitate orderly growth and development in the State."

4. In utilizing the NCD technique, Frizz–King expanded its net buildable area from two noncontiguous parcels by 64 acres and increased its number of allowable lots from 34 to 54.

homes adjacent to the existing tree line—rather than placed in the middle of an open field—would contribute to preserving the rural character of the area.

Frizz–King's counsel disputed Dr. McLellan's contention that the area surrounding the subdivision is predominately rural. He noted that the proposed subdivision was immediately adjacent to the 900 lot Chester Harbor subdivision, that the adjacent Grasslands Plantation also contained a thirty-two lot subdivision, and that there were other subdivisions and the town of Chestertown in the immediate vicinity. He added, moreover, that the proposed subdivision was in the immediate vicinity of substantial commercial development, including the three largest car dealerships in the area.

The Commission approved the proposed subdivision without making any findings of fact. At the close of the hearing, Jeffrey Thompson, Frizz–King's counsel, explained the need for the Commission to make findings and the Commission's legal counsel echoed these concerns: "Without the findings, Mr. Thompson is correct, . . . [the case] will be sent back to you because it's not clear from the record what findings that you've made or haven't made." Mr. Thompson prepared and submitted into the record proposed findings of fact. The Commission declined to make findings, however, resolving that it could grant final approval on the planning and zoning staff's recommendation:

> BOARD MEMBER: Staff has reviewed all these things. Staff recommends, they see nothing that would prohibit us from granting a final approval. I'd like to make a motion that we grant final approval, final subdivision approval to [Frizz–King] to create 49 cluster lots, one open space lot, public roadways as outlined on the application . . . with the following conditions: All required bonds and sureties and inspection fees be submitted, a maintenance inspection agreement be provided to the Public Works, all required legal documents be signed and recorded, all required signatures be obtained, and this is taking into consideration the

recent submissions of [Grassland's counsel] and Mr. Thompson.

The Commission then approved the motion.

### The Board of Appeals Proceedings

Grasslands appealed the Commission's decision to the Board, listing eleven grounds. Grasslands alleged, *inter alia,* that the County's NCD program did not comply with Article 66B, the subdivision approval did not comply with the County's "Comprehensive Plan and the 'Title 18' zoning ordinance[,]" the Commission failed to make "written specific findings of fact and conclusions of law[,]" and the "subdivision's open space areas are not in conformance with the applicable standards of the Queen Anne's County Title 18."

Frizz–King filed a Motion to Compel Specific Grounds for Appeal, contending that Grasslands's "contentions are so broadly framed as to deny [Frizz–King] the basic due process right to be apprised of the issues on appeal and to enable it to adequately prepare to present evidence and argument." Grasslands countered with a Motion for Summary Judgment in which it contended that "there are no relevant facts in dispute—the Planning Commission failed to make the necessary findings required by law." It argued that "even with these proceedings being · *de novo* with respect to the issues raised, [Grasslands] cannot assert the Planning Commissioner's errors in their entirety without knowing what the Planning Commission did and why."

The Board declined to accept Grasslands's summary judgment motion on the ground that it "was not part of the Board's procedures." It then reviewed the eleven grounds and found that four were alleged with insufficient clarity, including the allegation that "[t]he subdivision approval does not comply with [the] Queen Anne's County Comprehensive Plan and the 'Title 18' zoning ordinance." According to the Board, Grasslands needed "to specify how the grant of the subdivision does not comply with the Comprehensive Plan or

Title 18 in order for the parties to prepare intelligently." In a supplemental notice of appeal, Grasslands alleged:

The Planning Commission improperly failed to consider whether the Highlands development complies with the Comprehensive Plan in violation of Title 18. § 18:1–4 defines the purpose of Title 18 and how it to be interpreted and administered: "The purpose of Title 18 is to implement the Comprehensive Plan ..." Likewise, § 18:1–161 of Title 18 requires that "A subdivision layout shall conform to the Comprehensive Plan." Again, the use of the word "shall" is mandatory. At the time of the submission of the Highlands development to the Planning Commission, it was the developer's burden of proof to establish that the development is in compliance with the Comprehensive Plan because it presented no relevant evidence or testimony.

The Board held a hearing on the merits on October 26, 2006. Grasslands's counsel questioned whether the burden of proof should rest on Grasslands, as opposed to Frizz–King, in an appeal from a Commission decision. He then argued that the Commission was required to make findings. Dr. McLellan, again, testified on behalf of Grasslands. When Dr. McLellan attempted to offer her opinion and two exhibits stating that the Highlands did not conform to the County's Comprehensive Plan, Frizz–King's counsel objected on the ground that Grasslands had failed to disclose in advance of the hearing the subdivision's "specific incompatibility" with the Comprehensive Plan. The Board sustained Frizz–King's objection concerning one of Dr. McLellan's exhibits, and with respect to the other, only allowed her to testify about the "general goal of a comprehensive plan" without reference to "specific application of the Comprehensive Plan[.]" Dr. McLellan proceeded to testify, in general fashion, that the County's NCD program is incompatible with the County's Comprehensive Plan.

With the exception of one item,[5] the Board denied Grasslands's appeal "because it [did] not believe that [Grasslands]

---

5. The Board expressed concern about the pedestrian access to a park located across Route 544 and conditioned subdivision approval on

... met its burden of proof." The Board found, *inter alia,* that (1) "[t]he County's [NCD] program is not inconsistent with Article 66B[;]" (2) "[a]lthough they might be helpful, the ... Commission does not have to make findings of fact and conclusions of law[;]" (3) there "is no evidence to suggest that the subdivision's open space areas are not in conformance with applicable standards of ... Title 18[;]" and (4) "the subdivision complies with the County Adequate Public Facilities Ordinance." According to the Board, the Commission was not required to make findings of fact and conclusions of law "since appeals from the ... Commission go to the Board as *de novo* appeals instead of to the circuit court on the record." The Board observed that under QACC Section 18:1–120, the Board "is empowered to substitute its judgment for that of the ... Commission." The Board did not specifically address whether the subdivision approval was in compliance with the County's Comprehensive Plan.

### Court Proceedings And New County Legislation

Grasslands filed a Petition for Judicial Review in the Circuit Court for Queen Anne's County and that court affirmed the Board's decision on June 22, 2007. Grasslands noticed an appeal to the Court of Special Appeals ("CSA") on July 13, 2007. Just prior to oral argument in the CSA, the County enacted two ordinances pertinent to this appeal: the "Development Consistency with the Queen Anne's County Comprehensive Plan" Act (Ordinance No. 07–42, effective on February 23, 2008, hereinafter "Conformity Ordinance") and the "Emergency Service Protection Act" (Ordinance No. 06–103, effective March 29, 2008, hereinafter "Emergency Service Ordinance").[6]

The Conformity Ordinance added the following code section:

Frizz–King's "reaching an agreement with the County about pedestrian access and making any improvements to achieve such pedestrian access." Frizz–King subsequently executed a Public Works Agreement establishing a walking trail to connect the subdivision with the park.

6. The County also enacted a new ordinance, the "Adequate Public Facilities Ordinance" (Ordinance No. 06–107, effective March 24, 2007,

All development shall conform to the Comprehensive Plan. The Planning Commission or Planning Director may not approve a site plan under Article XXV or a subdivision under Article XXVI unless it finds that the development conforms to the visions, objectives, and policies of the Comprehensive Plan.

QACC § 18:1–138.1. The ordinance was enacted for the stated purpose "of requiring that every site plan and subdivision proposed in Queen Anne's County conform to the visions, objectives and policies of the Queen Anne's County Comprehensive Plan[.]"

The Emergency Service Ordinance added the following subpart, indicated in italics, to the "Objectives" section of the article addressing subdivisions:

The Planning Director and Planning Commission shall encourage designs that not only meet the minimum subdivision requirements but also result in the most beneficial use of land by:

\* \* \*

*K. Providing for public safety through compliance with the State Fire Code and with any applicable County or municipal Fire Codes.*

---

hereinafter "2007 APFO") which replaced the previously entitled "Interim Adequate Public Facilities Ordinance" This new ordinance was enacted prior to the Circuit Court's decision. When before the Court of Special Appeals ("CSA"), Grasslands argued that the 2007 APFO required a new review by the County's APF Technical Committee to determine the subdivision's adequacy regarding impacts on water, sewer, schools and transportation. The CSA, in its unreported opinion, rejected the retrospective application of the 2007 APFO because in Section 28–4(d), it expressly exempts "any Development Proposal for which an APF Study has been approved pursuant to the former Chapter 28, 'Interim Adequate Public Facilities Ordinance.'" Grasslands did not dispute that the subdivision met that qualification and, instead, contended that Frizz–King changed the number of entrance roads from two to one. The CSA found this position to be without evidentiary support and Grasslands does not now argue, in this appeal, the 2007 APFO's retrospective application.

QACC § 18:1–159 (emphasis added). The ordinance also added the following language, indicated in italics, to one of the requirements for site plan approval:

B. Requirements for approval. The Planning Commission may not approve any site plan unless it determines that the site plan:

\* \* \*

(7) Will not adversely affect the public welfare, *and will provide for public safety through compliance with the State Fire Code and with any applicable County or municipal Fire Codes.*

QACC § 18:1–153 (emphasis added). The ordinance's purpose clause provides as follows:

FOR THE PURPOSE of authorizing the Queen Anne's County Planning Commission to consider and analyze the effect of residential and commercial development on the effective and timely delivery of emergency services.

\* \* \*

AND WHEREAS, in connection with the approval of new residential and commercial development, the Queen Anne's County Planning Commission should consider the impact of such development on the provision of emergency services and should be authorized to require, through developer exactions, restrictive covenants and other means, that any negative effects of new development on the provision of emergency services be offset and mitigated to the extent necessary[.]

The CSA, in an unreported opinion, affirmed the Circuit Court on July 9, 2008. Among a number of rulings, it held that the Commission was not required to make findings of fact and conclusions of law. The CSA determined that the Board gave each of Grasslands's allegations explicit consideration. It also held that the Board did not improperly place on Grasslands the burden of proof. As discussed in footnote five, the CSA rejected Grasslands argument that the 2007 "Adequate

Public Facilities Ordinance" should be retrospectively applied, but did not address whether the Conformity Ordinance or the Emergency Service Ordinance required the case to be reversed or remanded for administrative review.

We issued a writ of certiorari to consider Grasslands's following three questions, which we have reordered:

I. Did the CSA err by sustaining the Circuit Court ratification of the Board of Appeals's improper allocation of the burden of proof upon the appellant (as protestant to a subdivision application) instead of upon developer appellee, as required by law?

II. Did the CSA err in affirming the decisions of the Circuit Court and the Board of Appeals in light of its failure to consider intervening legislation enacted by the Queen Anne's County commissioners that elevated the Queen Anne's County Comprehensive Plan by "mandates of compliance" to the "level of a regulatory device"?

III. Did the CSA err by failing to remand the Highlands subdivision matter in light of the enactment of applicable local legislation prior to its decision?

## DISCUSSION

### *Standard Of Review*

"When reviewing the decision of a local zoning body, such as the Board, we evaluate directly the agency decision, and, in so doing, we apply the same standards of review as the circuit court and intermediate appellate court." *Trinity Assembly of God of Balt. City, Inc. v. People's Counsel for Balt. County,* 407 Md. 53, 77, 962 A.2d 404, 418 (2008). Our role is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv. v. People's Counsel for Balt. County,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994). "In applying the substantial evi-

dence test, we have emphasized that a 'court should [not] substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken.'" *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978) (citation and emphasis omitted). Our obligation is "to 'review the agency's decision in the light most favorable to the agency,' since their decisions are *prima facie* correct and carry with them the presumption of validity." *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998) (citation omitted).

"Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). We are under no constraint, however, "to affirm an agency decision premised solely upon an erroneous conclusion of law." *Ins. Comm'r v. Engelman,* 345 Md. 402, 411, 692 A.2d 474, 479 (1997).

## I.

### The Burden Of Proof

Grasslands contends that the Board improperly placed the burden of proof on it, as the appellant in the review hearing, to challenge the Commission's approval of the Highlands subdivision. This burden of proof allocation, Grasslands argues, is unambiguously reflected in the Board's ruling that "[t]he Board ... does not believe that the Appellant has met its burden of proof." Grasslands asserts that the Board engaged in a *de novo* review of the Commission's decision and contends, citing *Board of County Commissioners for St. Mary's County v. Southern Resources Management, Inc.,* 154 Md.App. 10, 39 n. 9, 837 A.2d 1059, 1075 n. 9 (2003), that in such a proceeding, the burden of proof remains with the applicant.

Maryland Code (1957, 2003 Repl.Vol.), Article 66B ("Art.66B"), Section 4.07(d)(1) provides authorization for the Board to "[h]ear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative officer in the enforcement of this article or of any ordinance adopted under this article[.]" Under Article 66B, Section 4.07(h)(1), the Board may wholly or partly reverse, affirm, or modify the order, requirement, decision, or determination from which the appeal is taken, as well as issue a new order, requirement, decision, or determination. Article 66B, Section 4.07(h)(2) states that the Board "shall have all the powers of the administrative officer from whom the appeal is taken." Article 66B, Section 4.07(c)(1) provides that the Board "shall adopt rules in accordance with the provisions of any ordinance adopted under this article."

Chapter 18:1 of the Queen Anne's County Code, in addressing the Board's powers, reflects Article 66B.[7] QACC Section 18:1–119(D)(2) adds that a notice of appeal shall "[s]pecify the grounds for the appeal and the relief sought." The Board has also adopted rules governing the conduct of its hearings. Rule 4(B) provides, *inter alia,* that "[a]ll parties are entitled to have witnesses summoned to appear[.]" Rule 4(C) addresses documentary evidence:

> Documentary evidence may be produced by any party in support of his or its position.... Such documentary evidence shall become a permanent part of the record of the hearing, except that, with the permission of the Board, originals may be withdrawn upon the substitution of a photocopy[.] ... Applicant may move all marked Exhibits

---

7. QACC Section 18:1-120 provides:
 A. In general. In deciding any appeal from an administrative decision, the Board shall have all powers of the person from whom the appeal is taken and may make such order, requirement, decision, or determination as ought to be made in conformity with Article 66B of the Annotated Code of Maryland and this Chapter 18:1.
 B. Nonvariance appeals. In an appeal that does not involve a variance, the Board may reverse, affirm, or modify, wholly or partly, the order, requirement, decision, or determination from which the appeal is taken.

into evidence at the commencement of the hearing. Any opposition must be raised at that time.

Rule 4(D) addresses the order of events at a hearing:

The applicant or appellant may make a brief opening statement at the outset of the hearing and any opposing party shall be accorded the privilege. The sequence of direct and cross examination shall be the direction of the Board at the time of the hearing.... The applicant or appellant shall offer its witnesses and evidence at the outset of the hearing and at the conclusion of the applicant's or appellant's case, any opposing party shall offer its witnesses and evidence. At the conclusion of all evidence, each side shall be permitted a reasonable period of time for argument.

Frizz–King maintains that the Board "is free to place the burden of proof on whomsoever [it] chooses unless there is an applicable law prohibiting it from doing so" and that the County's code and Board of Appeals Rules place the burden on the party appealing the Commission's decision. Frizz–King asserts that the Board's review was not of a purely *de novo* appeal, as in *Southern Resources*, but instead, was a review of a partially *de novo* appeal, as in *Hikmat v. Howard County*, 148 Md.App. 502, 526–27, 813 A.2d 306, 320–21 (2002). According to Frizz–King, a partially *de novo* appeal "involves a new record that is created before the Board on the specific issues designated for appeal but, because it is presumed that the agency from which the appeal is taken decided the matter correctly, the burden transfers to the appellant before the Board of Appeals."

Frizz–King asserts that the burden of proof was properly on Grasslands because (1) under general principles of law, "it is entirely permissible to place on the parties seeking to change the *status quo* the burden both to come forward with the evidence in support of its action and to persuade the trier of fact that the change is justified[,]" *Baltimore Gas and Electric Company v. Everett*, 61 Md.App. 288, 300, 486 A.2d 248, 254–55 (1985), *rev'd on other grounds*, 307 Md. 286, 513 A.2d 882 (1986); (2) there is "a strong presumption that public officers

properly perform their duties[,]" *Lerch v. Maryland Port Authority,* 240 Md. 438, 457, 214 A.2d 761, 771 (1965); and (3) "[t]o always impose the burden of proof on the applicant, regardless of who prevailed before the initial administrative agency, would make for unduly broad and overly burdensome hearings." According to Frizz–King, administrative efficiencies "strongly favor allowing local jurisdictions to require the party who is alleging an error to proceed as the appellant and carry the burden of pleading with specificity and proving precisely what errors exist."

In *Hikmat,* a landowner in Howard County sought approval for a subdivision and filed a petition with the county's Department of Planning and Zoning ("DPZ") to waive a regulatory requirement in order to permit disturbance of a stream and buffer area located within the property. By letter, the DPZ denied the request, reasoning, *inter alia,* that the driveway was a self-created hardship. The landowner appealed to the Board of Appeals and it reversed, granting the waiver petition. According to the Board, the DPZ's denial was arbitrary and capricious because its " 'self-created hardship' " basis was inappropriately captioned and " 'not accurate when evidence was presented ... that the hardship was created by the stream and not by the creation of lots[.]' " *Hikmat,* 148 Md.App. at 511, 813 A.2d at 312. The Circuit Court then reversed the Board, determining that the Board exceeded its authority "by granting the waiver based on errors in wording or captioning in the denial letter[.]" *Id.* at 512, 813 A.2d at 312. The court explained that the question before the Board was fairly debatable and the matter should have been remanded to the DPZ to correct its denial letter.

The CSA considered "whether the Board applied the appropriate standard of review when it reviewed DPZ's decision." *Id.* at 523, 813 A.2d at 319. Howard County argued that the Board was "bound to a deferential standard of review" similar to the judicial standard of review. *Id.* The landowner acknowledged that "the Board's standard of review is not purely *de novo* in that it requires the Board to determine whether DPZ's decision was arbitrary, capricious or contrary to law

before arriving at its own conclusions, but it [did] not agree with [Howard County's] limited view of the Board's powers." *Id.*

· The *Hikmat* court reviewed Maryland Code (1957, 2001 Repl. Vol.), Art. 25A, Section 5(U)("Art. 25A"); the Howard County Charter ("Charter"); the Howard County Code ("HCC"); and Howard County Zoning Regulations to conclude that the Board's standard was "not as deferential as the judicial standard but [was] not a purely *de novo* proceeding." *Id.* at 527, 813 A.2d at 321. In reaching this conclusion, the court noted, first, that Article 25A granted the Board broad powers regarding original and appellate jurisdiction. It then observed that according to the Charter, all matters " 'which come before the Board pursuant to its exercise of original jurisdiction shall receive a de novo hearing on all issues[,]' " whereas " 'matters coming before the Board pursuant to an appeal from executive, administrative, or adjudicatory order wherein a formal hearing was held verbatim on the record developed shall be reviewed by the Board on the basis of the record before it.' " *Id.* at 525, 813 A.2d at 320. These provisions, the court explained, "are relevant in understanding the present dispute because they recognize the distinction between a *de novo* appeal and an appeal on the record and require that the Board's rules of practice and procedure not be inconsistent with the requirements set forth in Maryland's Administrative Procedure Act." *Id.*

The CSA then noted that the following HCC provision provided differing burden of proof allocations and standards for different types of *de novo* appeals:

(i) In an appeal of an administrative agency's issuance of a notice of violation of county laws and regulations, the burden of proof is upon the administrative agency (proponent) to show, by a preponderance of the evidence, that the respondent has violated the laws or regulations in question. However, it shall be the respondent's burden to prove all affirmative defenses, including the defense of nonconforming use.

(ii) In all other *de novo* appeals, the burden of proof is upon the appellant to show that the action taken by the administrative agency was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law.

*Id.* at 526, 813 A.2d at 320 (quoting HCC § 2.210(a)(4)). The *Hikmat* court observed that the burden of proof provision applicable to appeals on the record, HCC Section 2.210(b), applied "the same standard applicable to *de novo* appeals from administrative agencies." *Id.* The court then reviewed other county zoning regulations referencing the Board's powers to hear and decide appeals where it is alleged that the DPZ has erred in the interpretation or application of any provision in the zoning regulations.

The *Hikmat* court concluded that "the Board had the authority to grant the waiver if its own findings were sufficient to support such a conclusion." *Id.* at 528, 813 A.2d at 322. The court recognized that proceedings before the Board were not purely *de novo* in that the Board, under the Howard County Code, "was required to consider DPZ's decision and treat it as correct unless, based on the facts found from the evidence, [it] determined that DPZ's decision was clearly erroneous, and/or arbitrary and capricious, and/or contrary to law." *Id.* at 527, 813 A.2d at 321. The court observed, however, that aside from this deferential standard of review, "none of the code provisions and regulations addressing the Board's role in administrative appeals limit its powers." *Id.* In explaining the Board's breadth of authority, the court distinguished the *de novo* review at issue from appeals on the record and noted how the *de novo* proceeding offered a meaningful hearing:

Notably, the County Charter distinguishes between *de novo* appeals and appeals on the record [9] and requires that the Board's procedures comply with the requirements of Maryland's Administrative Procedure Act. These are important features because, when a county law provides for a hearing, due process requires that it be a meaningful hearing. In this case, the hearing before the Board is the first hearing. Under these circumstances, the Board's role is more akin to

a second tier administrative agency, rather than a first tier judicial reviewer, as appellee suggests. This approach is also consistent with other provisions contained in section 2.210, which explain how to conduct a *de novo* appeal, and with section 16.301, which permits the Board to hear and decide appeals when it is alleged that DPZ committed error, without providing further limitation on the Board's powers.

---

[9] According to the Charter, where there is a formal hearing below and a verbatim record developed, except in certain circumstances, the Board does not hold *de novo* evidentiary hearings but reviews the record for error. This type of appeal on the record is clearly distinguishable from a *de novo* appeal.

*Id.* at 527–28, 813 A.2d at 321–22.

In *Southern Resources*, the CSA reviewed a St. Mary's County Board of Appeals decision reversing a Planning Commission subdivision approval.[8] Among other issues, the court considered whether the Board had incorrectly used a *de novo* standard in reviewing the Planning Commission's decision. *Southern Resources*, 154 Md.App. at 22, 837 A.2d at 1066. The Circuit Court ruled, citing *Hikmat,* that the administrative standard of review was not a purely *de novo* proceeding. The CSA ruled that the Circuit Court was "incorrect in finding that *Hikmat* controlled the Board's standard of review" because the *Hikmat* decision was "based on an interpretation of the charter for Howard County, Howard County ordinances, and the enabling statute for charter counties, Md.Code, Art. 25A." *Southern Resources*, 154 Md.App. at 30, 837 A.2d at 1070.

The CSA explained that St. Mary's County, as a commissioner county, is governed by Maryland Code (1957, 1998 Repl.Vol., 2002 Supp.), Article 25 and that land use provisions

---

8. The property proposed for subdivision had been previously used for the manufacture of ordnance in the 1950s and unwanted live ordnance had been buried on the property as means of disposing it. A subsequent owner took remedial action to identify and remove the debris, but there was testimony that the clean up efforts had been inadequate. The St. Mary's County Planning Commission granted approval for one subdivision phase, satisfied that the property was safe.

for such counties is contained in Article 66B. The *Southern Resources* court noted that the St. Mary's County Board of Appeals had a broader review standard than did the Board in *Hikmat:*

> Article 66B specifically authorizes the establishment of a Board of Appeals as an administrative body created to "[h]ear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative officer in the enforcement of this article or of any ordinance adopted under this article." Md.Code, Art. 66B, § 4.07(d). The Board's standard of review is not directly addressed in Article 66B, but § 4.07(h)(2) provides the Board with all the powers of the administrative officer when the case is on appeal.
>
> The Board, by statute, was given broad powers, its standard of appellate review was not restricted by statute, and it was not restricted by ordinance or rule. Consequently, unlike the Board in *Hikmat,* the Board's review was appropriately *de novo* with respect to the issue being contested. All parties participated in the proceedings with that understanding.

*Id.* at 31, 837 A.2d at 1071 (citation omitted).

The *Southern Resources* court concluded that the Board applied an arbitrary standard requiring a showing of "100 % certainty" that the property proposed for subdivision was safe for residential use and that the Board erred in failing to provide specific findings to explain why it was not convinced the property was safe. *Id.* at 33, 36, 837 A.2d at 1072, 1074. The court then explained that it "must vacate the Board's decision and remand to the Board to either remand to the Planning Commission or to conduct further proceedings itself." *Id.* at 39, 837 A.2d at 1075. The court directed the Board, on remand, to "determine whether the Property, or some portion of it, is suitable for residential development, and if so, to what extent and under what restrictions, applying a reasonable and non-arbitrary standard." *Id.* It added that the Board "must include specific findings of fact and conclusions in its opinion, whether it conducts the proceedings itself or on

appeal after remand to the Planning Commission." *Id.* In a footnote, the court explained: "To make our holding clear, *we expressly state that we are not shifting the burden of proof. The burden remains on [the subdivision approval applicant].* We are addressing the evidentiary requirements to support the Board's decision." *Id.* at 39 n. 9, 837 A.2d at 1075 n. 9 (emphasis added).

Having reviewed these decisions by our intermediate appellate court, we agree with Grasslands that the Board's governing statutes and rules called for it to engage in a purely *de novo* review. Queen Anne's County is a Code home rule county and is governed by the land use provisions of Article 66B. *Queen Anne's Conservation, Inc. v. County Comm'rs,* 382 Md. 306, 320, 855 A.2d 325, 333 (2004). As with the St. Mary's County Board in *Southern Resources,* Article 66B, Section 4.07(h)(2) does not directly address the Queen Anne's County Board's standard of review, but provides it with all the powers of the administrative officer when the case is on appeal. Unlike the applicable Howard County provisions in *Hikmat,* neither Article 66B, Section 4.07; QACC Section 18:1–120; nor the Board's rules call for the Board to accord any deference to a decision by the Commission. Indeed, QACC Section 18:1–120(B) states that "the Board may reverse, affirm, or modify, wholly or partly, the order, requirement, decision, or determination from which the appeal is taken."

In *Halle Companies v. Crofton Civic Association,* 339 Md. 131, 661 A.2d 682 (1995), we considered the nature of a *de novo* review by a county board of appeals to determine whether the Anne Arundel County Board of Appeals exceeded its authority by imposing a condition upon the grant of a special exception. We addressed our decisions in *Daihl v. County Board of Appeals,* 258 Md. 157, 265 A.2d 227 (1970) and *County Federal Savings and Loan Association v. Equitable Savings and Loan Association, Inc.,* 261 Md. 246, 274 A.2d 363 (1971), in which we held that a board of appeals cannot review actions which were not appealed specifically:

"[T]he context in which the term *de novo* is used . . . means that on appeal there shall be a *de novo* hearing on those issues which have been appealed and not on every matter covered in the application. In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal."

*Halle Companies*, 339 Md. at 141–42, 661 A.2d at 687 (quoting *Daihl*, 258 Md. at 162, 265 A.2d at 229). These holdings, we explained, showed "that we have consistently treated *de novo* appeals as wholly original proceedings, with the word 'appeal' meaning simply that the proceedings are new and independent rather than strict review of prior proceedings." *Id.* at 142, 661 A.2d at 687. "Although the issues to be addressed on review by the Board may be limited, new and additional evidence is permitted. The proceedings, therefore, are wholly original with regard to all issues properly raised." *Id.*

We observed that the Anne Arundel County Board was authorized to "review the actions of the administrative officer and take any action which that officer could have taken" in the initial proceeding and that additional evidence may be presented during the Board's *de novo* proceedings. *Id.* at 143, 661 A.2d at 688. We regarded the Board's proceedings as "appellate review mainly in the sense that a decision by the administrative hearing officer is a prerequisite to proceedings before the Board[.]" *Id.* Quoting *Boehm v. Anne Arundel County*, 54 Md.App. 497, 511, 459 A.2d 590, 599 (1983), we indicated that the Board's *de novo* hearing " 'is an entirely new hearing at which time *all aspects of the case should be heard anew, as if no decision has been previously rendered[.]* ' " *Halle Companies*, 339 Md. at 144, 661 A.2d at 688 (emphasis in original). The *Boehm* court elaborated on this *de novo* hearing definition with the following exposition:

"Thus, it is said that where a statute provides that an appeal shall be heard de novo such a hearing is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held, especially where the hearing is in a court of

general, original jurisdiction. Where a statute provides for a trial de novo and does not provide that the findings of the administrative agency shall be conclusive or of any force, the whole matter is opened up for consideration on appeal as if the proceeding had been originally brought in the reviewing court."

*Boehm,* 54 Md.App. at 509–10, 459 A.2d at 598 (quoting 2 Am.Jur.2d *Administrative Law* § 698 (1962))(emphasis omitted).

In light of the purely *de novo,* original, nature of the proceedings before the Board concerning the issues on appeal, it follows that the burden of proof remained on Frizz–King to establish that its proposed subdivision satisfied the requirements of the Queen Anne's County Code. In *Committee for a Rickel Alternative v. City of Linden,* 111 N.J. 192, 543 A.2d 943, 947 (1988), a variance applicant contended that "the appellant bears the burden of demonstrating entitlement to the relief sought" in a *de novo* proceeding before the reviewing city council. The applicant obtained approval for a use variance by the board of adjustment ("Board"). A merchants association objected to the variance in the proceedings before the Board and took an appeal to the city council ("Council"). After a *de novo* review of the record made before the Board, five Council members voted to affirm the Board, five voted to reverse, and one abstained because of a conflict of interest. The Supreme Court of New Jersey considered whether, under the state's municipal land use law, a tie vote affirms or reverses a grant of a use variance by the Board.

In arguing that a tie resulted in an affirmance of the result below, the variance applicant maintained that the burden was on the appellants in the review proceeding before the Council to prove that the applicant was not entitled to the variance. The *Rickel* court rejected the applicant's shifting burden argument:

The argument misconstrues the nature of *de novo* proceedings. We concluded in *Evesham [Township Zoning Bd. of Adjustment v. Evesham Township Council]* that ... gov-

erning bodies reviewing an action by a board of adjustment had the "authority to make a *de novo* review of the record established before the board and reach its own decision in the matter subject only to the requirement that its findings and conclusions are supported by the record." 86 N.J. 295, 430 A.2d 922. "The governing body's task . . . is to consider the record . . . and the legal arguments of counsel and to make its own findings and conclusions based on that record and argument."

\* \* \*

In *Housing Authority of Newark v. Norfolk Realty Company*, 71 N.J. 314, 364 A.2d 1052(1976), an eminent domain case, we explained that "[a] trial *de novo* means, 'trying the matter anew, the same as if it had not been heard before and as if no decision had been previously rendered.' "

\* \* \*

If the matter truly is to be heard "anew, the same as if it had not been heard before," it follows that the parties in the *de novo* proceeding must remain in the same procedural posture that they maintained in the initial proceeding, and that the burden of demonstrating entitlement to the relief sought remains with the same party—the applicant— throughout. . . . Shifting the burden to the "appellant" would ignore these basic principles, a result that we decline to adopt. We therefore hold that on an appeal . . . to a governing body from a final decision by a board of adjustment approving an application for a variance . . . , the applicant before the board retains the burden of demonstrating entitlement to the relief sought.

*Rickel,* 543 A.2d at 947 (some citations omitted).

We agree with the *Rickel* court's burden of proof allocation in a *de novo* proceeding like the one at issue, and hold that the Board erred in placing the burden of proof on Grasslands. QACC Section 18:1–160(A)(2) states that "[t]he developer has the sole burden of establishing any facts necessary to any

determination required to be made" by Article XXVI, the article addressing subdivision approvals ("the Subdivisions Article"). This article contains particular requirements. *See, e.g.,* QACC § 18:1–172 (requiring roads adequate to provide access to all lots, storm drainage facilities, erosion and sediment control facilities, and an approved source of potable water supply and method of sewage disposal). It contains, moreover, a general requirement that the "Commission must find that the proposed subdivision addresses all nonconformities" with the provisions of the Subdivisions Article. QACC § 18:1–158(A). It also contains general standards of design, including the following provision in effect at the time of the proceedings before the Commission and Board: "A subdivision layout shall conform to the Comprehensive Plan and to the other provisions of the Chapter 18:1." QACC § 18:1–161(A).

In the Board's purely *de novo* review hearing—an entirely new hearing in which all specified issues on appeal should be heard anew as if no decision has been previously rendered— Frizz-King continued to have the "sole burden of establishing facts necessary to any determination required to be made" under the Subdivisions Article. Thus, the burden was not, for example, on Grasslands to establish facts showing that the subdivision's open space areas were not in conformance with the applicable standards of QACC, Chapter 18:1.

Frizz–King mistakenly claims that Grasslands has the burden of proof because it was the party seeking to change the *status quo* in the Board proceedings. In *Everett,* 61 Md.App. at 301, 486 A.2d at 255, the case relied upon by Frizz–King, the CSA held that the burden of proof was on the utility proposing termination of gas and electric service in a proceeding before the Public Service Commission. The *status quo* was the delivery of service, not the decision of an initial adjudicative decision maker, and the party seeking to change that status was the utility. *Id.* at 300, 486 A.2d at 254–55. In opposing Frizz–King's proposed subdivision, it was Grasslands that advocated for a continuation of the *status quo*—that the parcel would remain undeveloped. When before the Board, Frizz–King continued to be the party seeking a change in the

parcel's present use, though the Commission had approved its proposed subdivision, because of the "anew" nature of the Board's review. Because the Board erred in placing the burden of proof on Grasslands, we shall remand the case for the Board to reconsider Grasslands's issues on appeal to the Board. We now address whether the Board or Commission should apply the County's new legislation enacted after the Board's decision and before the case was argued before the CSA.

## II. & III.

### Intervening Legislation & Remand

Grasslands contends that the CSA erred by failing to remand this case to the Commission in light of the County's enactment of the Conformity Ordinance and the Emergency Service Ordinance. Indeed, it asserts, the CSA erred in failing to consider these ordinances altogether. Grasslands's focus is principally on the Conformity Ordinance, which now requires the Commission, when approving a site plan or a subdivision, to "find[ ] that the development conforms to the visions, objectives, and policies of the Comprehensive Plan." QACC § 18–1–138.1. Citing *Trail v. Terrapin Run, LLC*, 403 Md. 523, 527 n. 5, 943 A.2d 1192, 1194–95 n. 5 (2008), Grasslands asserts that the County, by enacting this ordinance, intended to elevate its Comprehensive Plan " 'by mandates of compliance' " to the level of an enforceable " 'regulatory device.' " (Emphasis omitted.) In other words, Grasslands maintains that the County has now imposed on the Commission a stricter standard of compliance with the County's Comprehensive Plan when approving a subdivision than was in effect at the time it approved Frizz–King's proposed subdivision. Additionally, relying on *Layton v. Howard County Board of Appeals*, 399 Md. 36, 70, 922 A.2d 576, 596 (2007), Grasslands asserts that this is a " 'substantive change in relevant statutory law' " that has taken " 'place during the course of the litigation of a land use or zoning issue [that] shall be retroactively applied by appellate courts.' "

Frizz–King responds that the Conformity Ordinance constitutes a change in procedure only, and that procedural changes are not applied retrospectively in land use or zoning cases. It maintains that, under this principle, the Commission need not apply the Conformity Ordinance on remand.

In deciding this question, we first examine the law on retrospective application of legislative enactments. We reviewed this subject in *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389, 394 (2000):

> The "retroactive" or "retrospective" application of a legislative enactment has been defined in 2 Norman J. Singer, *Sutherland's Statutory Construction*, § 41.01, at 337 (5th ed. 1993): "The terms 'retroactive' and 'retrospective' are synonymous in judicial usage and may be employed interchangeably. They describe acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act." (Footnote omitted.) Concerning the retroactive application of a statute, we noted in *Spielman v. State*, 298 Md. 602, 607, 471 A.2d 730, 733 (1984):
>
> > There is "no absolute prohibition against retroactive application of a statute." *[State Comm'n on Human Relations v. Amecom Div.*, 278 Md. 120, 123, 360 A.2d 1, 4 (1976).]* The question whether a statute operates retrospectively, or prospectively only, ordinarily is one of legislative intent. In determining such intent this Court has repeatedly stated, "there is a general presumption in the law that an enactment is intended to have purely prospective effect. In the absence of clear legislative intent to the contrary, a statute is not given retrospective effect." *Traore v. State*, 290 Md. 585, 593, 431 A.2d 96, 100 (1981).

Unlike the Adequate Public Facilities Ordinance addressed in footnote six, neither of the ordinances at issue contains an express statement of legislative intent about whether they are to operate retrospectively or prospectively. The Emergency Service Ordinance purpose clause states that "in connection

with the approval of new residential and commercial development, the ... Commission should consider the impact of such development ... and should be authorized to require ... that any negative effects of new development on the provision of emergency services be offset and mitigated[.]" Frizz–King would have us draw from this an intent to apply this ordinance prospectively because of its reference to *new* residential and commercial development. This new ordinance, it argues, does not apply to The Highlands because the Commission approved it before the ordinance's adoption. We do not agree with Frizz–King. This reference to new residential development does not exclude a proposed development that has received the Commission's approval but is in litigation. Indeed, the ordinance's Fiscal Impact Note states that its purpose is to "prevent or modify *proposed* development that may adversely affect the public welfare[.]" (Emphasis added.) An approval is not "finally valid" until all litigation concerning the approval is final. *See Powell v. Calvert County*, 368 Md. 400, 410, 795 A.2d 96, 101 (2002)(stating that "a special exception approval, whose validity is being litigated, is not finally valid until all litigation concerning the special exception is final").

Without any clear expression of legislative intent to inform our analysis, we proceed by addressing the common law presumption against retroactive application set forth in *Langston*. Not surprisingly, there are exceptions to this presumption, one involving procedural changes:

> One such category of exceptions concerns legislative enactments that apply to procedural changes. *See Roth v. Dimensions Health Corp.*, 332 Md. 627, 636, 632 A.2d 1170, 1174 (1993) ("Notwithstanding this presumption [against retroactivity], if the statute 'contains a clear expression of intent that it operate retrospectively, or the statute affects only procedures or remedies, it will be given retroactive application.' "); *Mason v. State*, 309 Md. 215, 219–20, 522 A.2d 1344, 1346 (1987) ("Despite the presumption of prospectivity, a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions

whether accrued, pending or future, unless a contrary intention is expressed. . . .")[.]

*Langston,* 359 Md. at 406–07, 754 A.2d at 394 (some internal citations omitted). Another exception is for remedial enactments that do not impair vested rights. *Id.* at 408, 754 A.2d at 395. " 'Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries.' " *Id.* (quoting 3 Norman J. Singer, *Sutherland's Statutory Construction,* § 60.02, at 152).

 The exception most pertinent to this case is the general presumption *in favor of* retroactivity in zoning and land use cases. *See Layton,* 399 Md. at 70, 922 A.2d at 596; *Armstrong v. Mayor & City Council,* 409 Md. 648, 976 A.2d 349 (2009). The petitioners in *Layton* sought a special exception to operate a primate sanctuary in Howard County, which was denied by the Board of Appeals. After the petitioners sought judicial review, the County amended its Code, changing the definition upon which the Board relied in making its zoning decision.[9] Both the Circuit Court and the CSA affirmed the Board's decision, but we reversed, concluding that under *Yorkdale Corporation v. Powell,* 237 Md. 121, 205 A.2d 269 (1964),[10] the petitioners were entitled to retroactive application of the "legislated change of pertinent law, which occur[ed] during the ongoing litigation of a land use or zoning case[.]"

---

9. The zoning provision at issue prohibited a person from keeping a wild or exotic animal, but was then amended to exempt animal sanctuaries. *Layton v. Howard County Board of Appeals,* 399 Md. 36, 45, 922 A.2d 576, 581 (2007).

10. In *Yorkdale Corporation v. Powell,* 237 Md. 121, 205 A.2d 269 (1964), the property owner sought a special exception and variance to build an apartment building. The zoning commissioner granted the owner's requests. A neighboring property owner challenged the decision and argued on appeal that applicable zoning ordinances did not authorize a variance in density. The Circuit Court agreed, and the variance applicant appealed to this Court. While the case was pending before this Court, the county council passed a bill expressly prohibiting the grant of variances as to density. In light of the new law, the *Yorkdale* Court held that the case was moot. *Id.* at 133, 205 A.2d at 276.

*Layton,* 399 Md. at 38, 922 A.2d at 577. We then directed the Board to apply the current law on remand. *Id.* at 70, 922 A.2d at 596.

In applying the *Yorkdale* rule, we considered the *Yorkdale* Court's following explanation for retrospective application of new enactments in zoning cases:

"[A] change in the law after a decision below and before final decision by the appellate Court will be applied by that Court unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent[.]

* * *

[A]n applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the actions below."

*Id.* at 54–55, 922 A.2d at 586–87 (quoting *Yorkdale,* 237 Md. at 124, 126, 205 A.2d at 271, 272) (citations omitted). Noting that we have affirmed this principle in a number of subsequent land use and zoning cases, we concluded that *"Yorkdale* and its progeny have never been overruled" and are "determinative in evaluating whether, in a land use or zoning case, 'a change in statutory law taking place during the course of a litigated issue should have retrospective application." *Id.* at 58, 922 A.2d at 589. *See also, Armstrong,* 409 Md. at 673, 976 A.2d at 364. In a footnote, however, we indicated that " '[a] different rule is applicable to procedural changes' " and that "[t]he present case concerns changes in reference to the substance of the law." *Id.* at 58 n. 18, 922 A.2d at 588–89 n. 18. For this proposition, we cited *Luxmanor Citizens Ass'n, Inc. v. Burkart,* 266 Md. 631, 644–45, 296 A.2d 403 (1972). *Id.*

Relying on this *Layton* footnote and *Luxmanor,* Frizz–King argues that the Conformity Ordinance's new requirement that the Commission "find[ ] that the development conforms to the visions, objectives, and policies of the Comprehensive Plan" is

merely a procedural change. This is so, says Frizz–King, because an existing county code provision already required conformity. *See* QACC § 18:1–161(A)(stating that "[a] subdivision layout shall conform the Comprehensive Plan and to the other provisions of this Chapter 18:1"). Citing *Luxmanor*, 266 Md. at 645, 296 A.2d at 410, Frizz–King asserts that the Conformity Ordinance's requirement that the Commission make *findings* is a change in " 'procedural machinery' which is construed under Maryland law to operate prospectively on all proceedings instituted after its passage, rather than retrospectively."

Upon careful examination of *Luxmanor* and its progeny, we do not agree with *Frizz–King* that procedural law changes are always construed to operate prospectively in a land use or zoning case. Rather, we think it depends on the type of procedural modification, and the point in the proceedings at which the legislative change is made. We explain.

In *Luxmanor*, we considered whether the grant of a special exception by a three to two vote of the members of the Montgomery County Board of Appeals was made void by a zoning ordinance amendment that was enacted during the pendency of an appeal to the Circuit Court, and required four affirmative votes for the granting of a special exception. We held that the action of the Board was not made void by the subsequent amendment—a holding based largely on the appellants' failure to raise the impact of the amendatory ordinance in the Circuit Court proceedings.[11] *Luxmanor*, 266 Md. at 644, 646, 296 A.2d at 410, 411.

Despite the non-preservation, we proceeded to discuss a group of cases upon which the appellants relied to support their claim that the Board's decision should be voided because

---

11. Citing Maryland Rule 885—the predecessor to Maryland Rule 8–131(a)—we observed that "we do not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court, such as the question under discussion." *Luxmanor Citizens Ass'n, Inc. v. Burkart*, 266 Md. 631, 644, 296 A.2d 403, 410 (1972).

of the new ordinance. *Id.* at 644–46, 296 A.2d at 410–11 (addressing *Dal Maso v. Bd. of County Comm'rs for Prince George's County*, 264 Md. 691, 288 A.2d 119 (1972); *Springloch Area Citizens Group v. Montgomery County Bd. of Appeals*, 252 Md. 717, 251 A.2d 357 (1969); *Janda v. General Motors Corp.*, 237 Md. 161, 205 A.2d 228 (1964); and *Yorkdale*, 237 Md. at 121, 205 A.2d at 269). Rejecting this argument, we offered the following problematic reasoning: "This Court has decided that a legislative change in the law in regard to procedure, rather than in regard to substance, will be applied to matters and proceedings taking place after the effective date of the change in the law." *Id.* at 644–45, 296 A.2d at 410. For this proposition, the Court relied primarily on the following language from a 1958 workers' compensation case, *Beechwood Coal Company v. Lucas:*

> "[W]here the effect of the new statute is not to impair existing substantive rights but only to alter the procedural machinery involved in the enforcement of those rights, *such legislation is usually construed as operating on all proceedings instituted after its passage,* whether the right accrued before or after that date."

> \* \* \*

> The appellants do not contend that the amendment requiring four affirmative votes for granting a special exception must be applied to a decision made after its enactment, but rather that the ordinance must be applied to invalidate a decision of the Board made some six and one-half months *prior* to its enactment.

*Luxmanor*, 266 Md. at 644–45, 296 A.2d at 410 (quoting *Beechwood Coal Co. v. Lucas*, 215 Md. 248, 254, 137 A.2d 680, 683 (1958))(emphasis in original).[12]

---

**12.** Answering the *Luxmanor* appellants' argument that "the general rule, *i.e.,* that we apply the zoning law existing at the time of the appeal" should govern, this Court said: "This is correct when there is no vested right involved if the change in the law subsequent to the decision in the lower court makes the case moot because the prior

Our decision in *Luxmanor* has been cited in dictum for the proposition that procedural changes receive prospective application in zoning cases. *See Layton,* 399 Md. at 58, 58 n. 18, 922 A.2d at 588–89 n. 18, 589 (discussing *Anne Arundel County. v. Maragousis,* 268 Md. 131, 299 A.2d 797 (1973) and its remand for reconsideration under the new substantive law while noting from *Luxmanor* that a different rule is applicable to procedural changes); *Powell v. Calvert County,* 368 Md. 400, 413–14, 795 A.2d 96, 103–04 (2002)(distinguishing *Luxmanor's* procedural change from the substantive change in law concerning a special exception); and *Maragousis,* 268 Md. at 139, 139 n. 3, 299 A.2d at 802, 802 n. 3 (indicating our consistent policy to consider zoning cases on the state of substantive law as it exists when the case is argued while citing *Luxmanor* for the proposition that "[a] different rule is applicable to procedural changes"). Frizz–King seeks to capitalize on *Luxmanor* and this dicta to support its arguments. But upon close examination of all the precedent, which admittedly contains some bothersome loose language, we construe the law as contrary to its position.

*Luxmanor's* dictum quoted above was imprecise and did not accurately reflect the very cases it cited. That imprecision was then repeated as if by rote in the line of cases cited above, but simply in the course of applying substantive zoning or land use enactments, not procedural enactments.

*Luxmanor's* imprecision lay in articulating the rule about legislative changes in procedural laws as if there were a wholesale distinction between modification of a procedural land use law and modification of a substantive land use law. Yet *Beechwood Coal*—the workers' compensation case relied on by the *Luxmanor* Court—does not establish a wholesale rule of prospective application for procedural statutes. Indeed, if anything, it stands for the opposite.[13]

---

statutory basis for the action below has been removed by statute." *Id.* at 645, 296 A.2d at 411.

**13.** Unsurprisingly, *Luxmanor* has been cited for the opposite proposition—that a statute which affects only procedures or remedies will be

*Beechwood Coal* was a workers' compensation case in which the Legislature amended a statute defining the State Industrial Accident Commission's authority to review findings of the Medical Board. Under the amended statute, the Commission was no longer bound by the findings of the Medical Board which relate to medical matters. The issue was "whether the law in effect at the time of the injury or disability is controlling or whether the law as it existed at the time of the hearing before the Medical Board and of the review of the record by the Commission should govern." *Beechwood Coal,* 215 Md. at 252, 137 A.2d at 682. The appellants sought application of the old statute, claiming a substantive right to the Medical Board's findings.

The *Beechwood Coal* Court relied on, *inter alia, Thomas v. Pennsylvania Railroad Co.,* 162 Md. 509, 160 A. 793 (1932), in holding that the appellants did not have a "vested right" to "have the Medical Board's findings . . . conclusively presumed to be correct" under the old provision the Court regarded as "procedural." *Beechwood Coal,* 215 Md. at 255, 257, 137 A.2d at 683–84. In other words, *Beechwood Coal* held that the amended statute should be applied retrospectively to the appellants' accrued action. The Court analyzed and followed *Thomas,* recognizing it as a case in which it was proper to give a procedural statute retrospective operation, though the appeal had been entered prior to the amendment's effective date:

> In *Thomas,* the Court held that an amendment to the Workmen's Compensation Law requiring court review of the Commission's actions to be confined to and based upon the record made before the Commission (or upon a stipulation of facts made by the parties) was applicable, even though the appeal by the claimant from the Commission's action had been entered before the effective date of the amendment and was heard several months after the effective date. . . . The Court . . . held that the provision was "merely procedural," and affirmed the action of the lower

given **retroactive** application. *See State Comm'n on Human Relations v. Amecom Div.,* 278 Md. 120, 124, 360 A.2d 1, 4 (1976).

court in refusing to admit any testimony at the trial from the witnesses whom the claimant had produced to testify in his behalf.... The majority ... held that it was not unconstitutional to give the statute a ***retrospective operation,*** stating that "it deprives the appellant of no property or rights in an existing contract, and no right of action or ground of recovery. She is not denied the benefit of proof of the facts. ***The provision is merely procedural*** [.]" *Id.* at 255–56, 137 A.2d at 683–84 (citations omitted, emphasis added). Thus, neither *Beechwood Coal* nor *Thomas* gave succor to the *Luxmanor* dictum suggesting that procedural enactments in the zoning/land use area must be applied prospectively. Nor is there any hint that *Luxmanor* actually intended to judicially modify the law as set forth in *Beechwood Coal* or *Thomas.*

What we learn from our study of these cases is that not only does Frizz–King's theory lack a legal pedigree, but it makes no logical sense. The basic reason we presumptively apply new legislation prospectively is our concern that a retrospective application may interfere with substantive rights. *Amecom Div.,* 278 Md. at 123–24, 360 A.2d at 4. Because procedural changes in most contexts do not affect substantive rights, such legislation is generally excluded from the presumption of prospectivity. *See id.* at 124, 360 A.2d at 4 (stating that if "the statute affects only procedures or remedies, it will be given retroactive application") (citations omitted). We can fathom no sensible reason for drawing a wholesale distinction between new procedural zoning/land use legislation and new substantive zoning/land use legislation, and applying the former more restrictively than other procedural legislation, when we still apply the latter less restrictively than other substantive legislation. *See Yorkdale,* 237 Md. at 124–26, 205 A.2d at 271–72 (holding that new *substantive* zoning legislation, such as a change in permitted uses, is applied retrospectively).

Accordingly, we do not accept Frizz–King's invitation to resolve this case by drawing a wholesale distinction between procedural and substantive changes in zoning/land use

law, and then classifying the Conformity Ordinance as procedural, which would lead us to the inevitable conclusion that it must be applied prospectively only. We believe the analysis is slightly more complex, *i.e.*, if the new law is procedural, the decision about retroactivity will turn on what aspect of the administrative/adjudication process is changed,[14] at what point

14. This variable is exemplified by our decision in *Arundel Corporation v. County Commissioners of Carroll County*, 323 Md. 504, 594 A.2d 95 (1991). In that case, the petitioner property owners filed applications for conditional uses for extractive operations. While the applications were pending, but prior to a Board hearing thereon, the County enacted a new ordinance requiring additional documentation to accompany an application for an agricultural district-extractive operations zoning designation. The documentation included, *inter alia*, a detailed site development plan, copies of all necessary state permits or letters, a comprehensive hydrogeologic study, an approved land reclamation and restoration plan, and a description of environmental impacts and planned mitigation measures. In light of the new ordinance, a Board representative attempted to return the applications to the petitioners' counsel more than two months after they were filed, but counsel refused to accept them. The Board then dismissed the applications without holding a hearing.

On appeal, the petitioners argued that the Board's retraction of its acceptance of the applications constituted an unlawful retroactive application of the new ordinance. The petitioners also argued that the ordinance (1) had subject matter that was preempted by state statutes, (2) undertook to regulate beyond the County's zoning power, and (3) was void for vagueness. Deciding the case narrowly, we held that the Board erred in retracting their acceptance of the applications because the new ordinance did not establish filing requirements for applications filed prior to its effective date. *Arundel Corp.*, 323 Md. at 510, 594 A.2d at 98.

Because the applications never reached the hearing stage, we declined to address the petitioners' contention that the new ordinance imposed additional elements to prove: "Whether the Board, on remand, will construe [the new ordinance] as establishing standards to be met in order to qualify for the requested conditional use approvals, and whether the Board will apply those standards to [the petitioners'] applications, are issues that are not before us." *Id.* at 511, 594 A.2d at 98. In refusing to process the petitioners' filed applications, the Board, in essence, violated the principle articulated in *Luxmanor:* the Board applied a new law in a manner that undid a valid filing which was completed in accordance with the pre-existing filing procedure. *The applicant's filing, which the Board did not repudiate for over two months, was not subject to the new law because the filing itself was not an aspect of the Board's hearing procedures.* Our mandate that the Board could not repudiate its acceptance of the filing did not preclude the Board from requiring the applicant to provide, at some point during the

in the administrative/adjudication process the change is made, and the question presented to the reviewing court. Because we see the procedural vs. substantive debate about the Conformity Law as uncomfortably close to call, we choose to resolve this case by assuming, without deciding, that it is procedural, and then performing the appropriate analysis.

We are dealing with an administrative decision made before enactment of the new legislation, but one which we void for reasons other than the new legislation, *i.e.*, error in applying the burden of proof. Thus, this case differs from *Luxmanor*, in which only the procedural change in law triggered the retroactivity analysis. This difference is significant because in *Luxmanor*, we were looking backwards to see if an earlier administrative proceeding should be re-done for the sole purpose of applying the new procedural law. Here, because we remand to the Board for a new hearing due to the burden of proof issue, we look forward—to decide what should occur in the future, as the proceedings recommence. This *Luxmanor* difference in vantage point merits a different rule because we should not duplicate expenditure of the parties' and administrative agency's resources for a new hearing simply to apply a new rule, that is arguably procedural, when the hearing was done correctly in the first place.

### Summary

In sum, the Emergency Service Ordinance, as a substantive law, should be applied at the new hearing because it is the law in effect at the time of the hearing, and does not impair vested rights.[15] *See Yorkdale*, 237 Md. at 124, 205 A.2d at 271. If

_____

proceedings, the additional documentation needed for the Board to make its decisions as to the merits of the appeal.

**15.** The issue of fire safety was not a litigated issue in the proceedings before the Board and that on this issue alone, a remand would not be warranted. A remand would not serve a useful purpose if merely based on a change in law without any claim of aggrievement by the application of the prior law. *See Layton*, 399 Md. at 58, 922 A.2d at 576 (stating that in a land use or zoning case, "a change in statutory law taking place during the course of a *litigated issue* should have retro-

the Conformity Ordinance were substantive, *Yorkdale* would require the same retrospective application. Even if the Conformity Ordinance is procedural, the Conformity Ordinance shall also apply because the Commission's or Board's process of making its decision will *begin anew* for an independent reason.

## Grassland's *Terrapin Run* Argument

█ Citing *Terrapin Run*, 403 Md. at 526–27 n. 5, 943 A.2d at 1194–95 n. 5, Grasslands attempts to improve its strategic position on remand by calling on us to characterize the Conformity Ordinance as a measure intended to elevate the County's Comprehensive Plan from functioning as a guide for the exercise of its zoning power to an enforceable " 'regulatory device' " by creating "mandates of compliance." (Citation and emphasis omitted.) We decline to do so because the issue is not preserved. In the proceedings before the Board, the advisory vs. regulatory nature of the County's Comprehensive Plan was not at issue. The Commission approved the subdivision without any findings of fact or conclusions of law. Grasslands argued that the subdivision approval did not "comply" with the County's Comprehensive Plan, but the Board did not address the issue, finding the allegation "overly broad." Thus, the record does not indicate whether the Commission or Board found The Highlands in strict conformity or in mere harmony with the Comprehensive Plan. We are not therefore presented with an assignment of error that requires us to decide the standard of adherence to the Comprehensive Plan by which Board or Commission is to review the proposed subdivision. *See Hammond v. Lancaster*, 194 Md. 462, 471–72, 71 A.2d 474, 478 (1950)(stating that we do not decide abstract, hypothetical, or contingent questions or formulate rules of law broader than is required by the precise facts to which it is to be applied).

___

spective application") (emphasis added). Because we are already· remanding the case on other grounds, however, the Board or Commission should apply the Emergency Service Ordinance to ensure that the development will not compromise current standards of fire safety.

## Conclusion

The Board erred in shifting the burden of proof from Frizz–King, the subdivision applicant, to Grasslands, the appellant in the Board's *de novo* review proceeding. In this proceeding—an entirely new hearing in which all specified issues on appeal should be heard anew as if no decision had been previously rendered—the burden remained on Frizz–King to establish facts necessary to obtain approval for its proposed subdivision. On remand, the Board or Commission should apply the Conformity and Emergency Service Ordinances, which were enacted while the case was on appeal.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AND REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO VACATE THE DECISION OF THE BOARD OF APPEALS OF QUEEN ANNE'S COUNTY AND REMAND THE CASE TO THE BOARD FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY.**